BOWERMAN *v.* ROGERS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 187. Argued February 16, 1888. — Decided March 19, 1888.

From the evidence in this case it is clear that the assignor of the defendants in error employed the plaintiffs in error as their agents to enter at the Custom House in New York importations of sugar imported by them, and, after protest, to commence suits to recover an excess of duty imposed upon the importations, and that the plaintiffs in error undertook to perform those services; and, it being settled in actions brought by other persons under similar circumstances and on like importations, that such duties were illegally exacted, and the plaintiffs in error having failed to commence suits within the period limited by law to recover such as were illegally exacted from the assignor of the defendants in error, *Held*, that the judgment of the court below for their recovery must be affirmed.

THE CASE is stated in the opinion of the court.

·· The defendants in error were assignees of Burgess, and were admitted by the court, under the provisions of the code of New York to appear as such, and as plaintiffs there to prose·cute the suit to judgment.

*Mr. Edwin B. Smith* for plaintiffs in error.

*Mr. Everett P. Wheeler* for defendants in error.

MR. JUSTICE MILLER delivered the opinion of the court.

The writ of error in this case is to a judgment of the Circuit Court of the United States for the Southern District of New York. This judgment was entered upon a verdict rendered by a jury in favor of the plaintiffs, Benjamin F. and Walter Burgess, under the peremptory instructions of the court, for the sum of $6105.77, against the defendants, Bowerman Brothers.

Burgess & Sons were dealers in sugars and molasses, residing in Boston, and Bowerman Brothers were sugar brokers, residing in New York. Burgess & Sons had a large part of the articles in which they dealt, either for themselves or as · agents for others, landed in New York, and entered at the custom-house there. In such cases they employed Bowerman Brothers as their agents, and it is not disputed that this agency extended to the entry of these goods at the custom-house in New York, as well as to the sale of them afterward. With regard to two shipments of goods so entered there, from two different vessels, a question arose as to the duties assessed upon them by the collector. This controversy proceeded as far as the payment of the duties through Bowerman Brothers, followed by an appeal from the decision of the collector to the Secretary of the Treasury, and a protest against the final action of the Department. All this was attended to and faithfully performed in due time by the defendants. They, however, did not bring suit to recover back the duties so paid, and the

single question to be decided here is, whether it was the duty of Bowerman Brothers, under the circumstances of their employment, to have brought such a suit against the collector for the excess of duties claimed to have been imposed by him on these importations.

The case arises in this way. Suits were brought by other parties who had paid similar duties upon like importations, and recoveries had against the collector upon precisely the same grounds mentioned in the protest of the plaintiffs in this suit, and in a case brought to this court the error of the Treasury Department was established. But the statute allowing recoveries to be had against the collector for excessive duties which have been paid requires the suits to be brought within ninety days after such payment has been made, and that period had elapsed before the decisions in those cases. It was for that reason too late for Burgess & Sons to cause suit to be brought to recover back their alleged excessive payments.

Bowerman Brothers maintain that, as mere sugar brokers, it was no part of their duty to cause suit to be brought on account of the imposition of excessive duties, and that they are not liable, therefore, for the failure to do so, by reason of which it is very clear the sum recovered in this suit was lost to the plaintiffs. On the other hand, Burgess & Sons insist that, whether it was a part of their duty as brokers to institute such suit or not, they had come under an obligation to do it by reason of conversation or correspondence which passed between the parties. The whole of this correspondence, and the verbal testimony of one of the plaintiffs which is very brief, is found in the bill of exceptions, and we concur with the judge who tried the case below that this correspondence itself makes out the obligation of Bowerman Brothers to have caused the institution of such a suit.

About the only piece of verbal testimony that is of any consequence in the consideration of this matter is the statement of Mr. Burgess on the stand, that his firm fully relied upon the defendants to attend to the matter of bringing such a suit. Some of the letters produced, which passed between them, make this very plain.

· On January 27, 1881, the plaintiffs wrote to the defendants as follows:

· "We notice the tests and have seen the sample. They are certainly very beautiful sugars for their class. Now, we feel anxious as to the duties on the dry test, but if they should be decided against us we must protest as soon as duties are paid, and place the matter in the hands of a first-class lawyer, the one employed by Messrs. Knowlton, perhaps, unless you know of a better, to commence the suit as soon as possible, but we hope all this will not be necessary. ·

＊　　　＊　　　＊　　　＊　　　＊

"If the sugars are marked up on dry test, it is necessary to formally protest against the decision of the collector and then appeal to the Secretary of the Treasury. This is the first step, and when the duties are paid to enter suit."

To this the defendants replied on the next day: "Your favor of yesterday is received and contents noted, all of which will be duly attended to."

Several other letters then follow concerning other importations and protests made by Bowerman Brothers on behalf of plaintiffs against the duties levied on those goods. On March 31, 1881, the plaintiffs wrote to the defendants: "Of course you will duly appeal from the government assessing duties by tests." On April 15, the defendants wrote to Burgess & Sons as follows:

"We have your favor of yesterday and enclose herewith the Secretary of the Treasury's reply to our appeal of March 5th, (sugars per 'Santiago,' Jan. 25, '81.) The collector's decision is affirmed. We suppose you will wait the decision in the Welch suit before commencing proceedings.

· "Please advise us."

To this the plaintiffs replied on April 16, as follows:

"We are in receipt of your favor of yesterday enclosing the reply of the Secretary of the Treasury to your appeal of March 5 regarding sugars ex Santiago, Jan. 25. We would await the decision in the Welch suit before commencing proceedings, if there is time.

"Please keep us posted in the sugar case."

On April 27, 1881, Bowerman Brothers wrote to plaintiffs as follows:

"Your favor of yesterday is received. The Kioto sugars are about half out of ship, and we send you to-night by express samples and tests of each mark. Our market is quiet but strong. We hear that the government has decided to appeal from the decision (in New York) in the Welch case. Sales reported as below."

On June 18, 1881, Bowerman Brothers again wrote to plaintiffs as follows:

"We presume you have in mind the Santiago's cargo — centrifugal, Angelita — which arrived here July 6th, 1880, the most of which was raised on polariscope test, one-fourth cent and 25 per cent above the legitimate rate of entry on Dutch standard, and will commence suit against the government in due season."

To this latter the plaintiffs, Burgess & Sons, replied on June 20, as follows:

"We have your favor of the 18th, in which you say, 'We presume you have in mind the Santiago's cargo — centrifugal, Angelita — which arrived July 6, '80, the most of which was raised on polariscope test, one-fourth and 25 per cent above the legitimate rate of duty on Dutch standard, and will commence suit against the government in due season.'

"The cargo you refer to did not pay at all, as we understand, duty above the Dutch standard, it having just escaped on dry test.

"Of course we must not let any of our cases escape due attention. We attend here to all our Boston cases and enter suits as fast as they come around, and we suppose you can do the same as our agents in New York. Are we right? Please look into every case and keep us timely informed and whether there is anything for us to do personally or by power."

We think the whole of this correspondence leads to the inevitable conclusion that the defendants, either expressly or by fair implication, assumed the duty of causing suit to be brought within a reasonable time; living, as they did, in New York, where the transactions all occurred, where the suit

must be brought, and being frequently admonished by the letters of plaintiffs to see that suit was brought in due time.

This is especially evident from the last letter quoted above, in which the expectation of plaintiffs is distinctly stated that defendants would cause suit to be brought " in due season," and an inquiry made whether they are right in that supposition. They had by the statement in their letter, " Please look into every case and keep us timely informed and whether there is anything for us to do personally or by power," which is not denied, raised an implied acknowledgment on the part of the defendants that they would attend to this matter.

Taking the evidence all together, it is very clear that Burgess & Sons understood that Bowerman Brothers would attend to the whole affair from the beginning to the end, and, without regard to their special occupation as mere sugar brokers, would take charge of all that was necessary to secure the rights of the plaintiffs in the matter of paying duties, making proper protests, getting the goods through the custom-house, and seeking redress by suit against the collector if that became necessary. And that they might be sure that they were not mistaken in this understanding, the letter of the 20th of June was written, which required in good faith that if Bowerman Brothers did not consider themselves charged with the duty of having a suit brought in due time, they should have made a disclaimer of it by an immediate answer. It cannot be denied that the loss by Burgess & Sons of the sum of money found in the verdict, was due to the failure of Bowerman Brothers to fulfil faithfully the obligation in this particular which they had assumed in this correspondence, and which Mr. Burgess swears his firm relied upon them to perform.

The judgment of the Circuit Court is

*Affirmed.*