THE STATE *v.* THE TRUSTEES OF THE VINCENNES UNIVERSITY.

ON PETITION for a Rehearing.

PERKINS, J.—It is not usual for this Court to deliver written opinions in deciding upon petitions for rehearing; but the magnitude of this cause, and the character of the

*Margin note: May Term, 1854. THE STATE v. THE TRUSTEES OF THE VINCENNES UNIVERSITY.*

May Term, 1854.

THE STATE v. THE TRUSTEES OF THE VINCENNES UNIVERSITY.

petition filed in it, seem to require a departure from the customary course.

It is insisted, in the petition, that the trustees of the *Vincennes* university were not an existing corporation at the time this suit was instituted, viz., in 1846. It is claimed that they had ceased to be such through negligence, in failing to attend and to hold semi-annual meetings.

In answer, we say, first, the record does not establish the fact of such negligence. Copies of the minutes of certain meetings of the trustees appear, and in regard to them Mr. *Judah* testifies, that they are "copies of extracts only of the minutes of the trustees; that they are full and complete, and not mutilated in any manner, so far as they go; that they were made for the purpose of showing the organization and continuance of the trustees, and certain petitions, and nothing more, and thereto are complete. The copy referred to in the present deposition of deponent is a full copy of all the proceedings of the meetings stated. There are other proceedings of said trustees set forth in their minute-book. That deponent has no recollection of the contents, the book being now at *Vincennes*." Such is the testimony on this point, and it would seem that it must be evident to every mind that the "extracts" given from the minute-book of the trustees for a particular purpose, do not purport to be the entire contents of said book. The testimony, however, removes all doubt that might exist in the matter, in stating that those extracts are complete extracts of the proceedings of all the meetings given, but that there are other proceedings of said trustees set forth in their minute-book. There must, therefore, have been other meetings of the trustees. How many? This question is not answered by the record.

We answer, secondly, that were such negligence established, it would not conclusively show a dissolution of the corporation. *Rollins* v. *Clay*, 33 Maine R. 132. A surrender of a charter by a corporation may be presumed from a neglect for a long time to choose corporators and to exercise the corporate franchises. *Brandon Iron Co.* v. *Gleason*, 24 Vermont R. 228. But in the case before us the

presumption of such surrender is rebutted by acts of the <span>May Term, 1854.</span>
legislature recognizing the continued existence of the cor-
poration.

<span>THE STATE v. THE TRUS-TEES OF THE VINCENNES UNIVERSITY.</span>

Nor would absence simply from three, or any number of
meetings, of itself vacate the office of a trustee. Elected
for life to an important station, it would seem to accord
with general principles of right and wrong, that he should
not be deprived of so valuable a privilege without a hear-
ing. And he could not be. The case of *The State of
Ohio*, on the relation of *Linley* v. *Bryce*, 7 Ohio R., part
second, p. 82, is in point. *Linley* was a trustee of the
*Ohio* university. The trustees were empowered by the
charter to remove members for certain causes, and fill va-
cancies "by an appointment to endure" until, &c., when
the legislature permanently filled the vacancy. In 1829
*Linley* left the state, and not returning, in 1832 an ap-
pointment was made to supply his place. *Linley* after-
wards filed his writ of *quo warranto*. Per *Lane*, J.:

" It is well settled, that neither a neglect to exercise cor-
porate powers, nor even an abuse of them, *ipso facto*, works
a forfeiture of the franchise; that the corporation subsists
until the forfeiture be ascertained and declared by a com-
petent tribunal, in a judicial proceeding instituted for that
purpose against it by government. 2 Burr. 869.—5 Mass.
R. 230.—16 Mass. R. 94.—7 Pick. 244.—2 T. R. 515.—
9 Cranch R. 51.—6 Cowen 23.—5 Johns. R. 380.—16
Serg. & Rawle 140.—1 Blackf. 267. It is equally well
settled, that no member of a corporation shall be disfran-
chised, no officer removed, without the agency of a tribu-
nal competent to investigate the cause, and pronounce the
sentence of the loss of right. The office is not vacant by
neglect or abuse; it requires *an act done*, or the *exercise of
power*, to work the forfeiture and determine the title to the
office; 2 Black. 156.—4 Kent's Comm. 127; for it is the
forfeiture of a vested right, for the breach of a condition in
law. Where the charter prescribes the terms under which
the power of amotion is to be exercised, they must be
pursued; where the organic law is silent, the corporation
itself possesses the inherent power to ascertain and declare

May, Term,
1854.

THE STATE
v.
THE TRUS-
TEES OF THE
VINCENNES
UNIVERSITY.

the forfeiture, either of franchise or office.   2 Kent's Comm. 297.—1 Burr. 517.—2 Bin. 441.—4 *id.* 448.—5 *id.* 486.— Angell and Ames on Corp. 237.

"This proceeding is essentially adversary in its character. The justice of the common law permits no investigation of facts which may be followed by the loss of a right, or by the infliction of a penalty, to be conducted *ex parte.* It is essential to its validity that the party should be duly summoned.   4 Black. Comm. 282.—1 East 638.— 6 Conn. 542.—2 Serg. & Rawle 141.—1 Burr. 540.— Doug. 174.

"In the present case, if the relator had forfeited his office by neglecting his duties, it was necessary that the corporation, after reasonable notice to him and an opportunity for hearing, should investigate the facts, and determine his title to the office by sentence, and thus create the vacancy. Until this was done, the relator was entitled to his seat, and the contingency had not happened in which the legislature could lawfully appoint a trustee."

Should the corporation, in any case, fail to discharge its duty in declaring and supplying vacancies, it might afford a ground for a proceeding by the state against it.

The seats of living members of the board of trustees, then, did not become vacant by absence, till so declared by a competent authority.   Such declaration was never made in this case; and it is proved that eight of the regularly elected trustees of the *Vincennes* university were living at the time the legislature passed the act in 1838 recognizing the existence of the corporation and filling up the board of trustees.   Their names are, *Isaac Blackford, Samuel Judah, John Law, John D. Hay, Robert Burtin, Henry Ruble, Nathaniel Ewing,* and *Richard W. J. Anson.*

Up to 1838, then, the coast is clear.   The *Vincennes* university existed in the full possession of all its rights; and as it owned the lands in question in 1807, it owned them in 1838.   And behind this latter date the state can not now go in searching for causes of forfeiture.

This conclusion disposes of the proviso in the act of 1838 in regard to conferring a right to the lands spoken of,

and shows that it was inserted simply by way of caution, so that if it turned out that the university had lost her title, that act should not restore it.

We may as well here remark, also, that the petition for a rehearing seems to doubt the validity of the appointment by the legislature in 1838 of new trustees in the places of a part of those then existing. Had the then existing trustees resisted, as in the case cited from *Ohio*, they would have ousted those appointed by the legislature. But they did not resist. They acquiesced, and their acquiescence cured all irregularities in the proceeding.

But we are told in the petition for a rehearing that the act of 1838 is a private act, and can not be noticed by the Court because not set out in the pleadings. True it had been noticed throughout the examination of the cause, and had been treated as a part of it by the Supreme Court of the *United States;* but it is now insisted that we shall strike it from the record. It is said to be a private act, because the corporation to which it relates is a private one. But such a consequence does not necessarily follow. A private corporation may have charge of an interest of so public a concern as to render its charter a public act. This Court has repeatedly held the charter of the *White Water Valley Canal Company* such an act for this reason. *White Water Valley Canal Company* v. *Boden*, 8 Blackf. 130.—*Hankins* v. *Lawrence*, *id.* 266.—*Russell et al.* v. *Branham et al.*, *id.* 277.

But it is conceded by counsel, as it must be to be consistent, that the act creating the *Vincennes* university is a private one. This being so, it can only be noticed so far as placed upon the record. Only such parts of it are placed upon the record as show the creation of said university as a perpetual corporation, and its endowment with the fund in question. Those parts of the act requiring meetings of the trustees and specifying grounds of forfeiture, are not before the Court—can not be noticed; and, hence, the whole argument in the petition about the forfeiture of the charter by non-attendance at meetings, &c., is out of the case and destitute of a particle of force.

May Term, 1854.

THE STATE
v.
THE TRUS-
TEES OF THE
VINCENNES
UNIVERSITY.

# 92    CASES IN THE SUPREME COURT

May Term,
1854.

THE STATE
v.
THE TRUS-
TEES OF THE
VINCENNES
UNIVERSITY.

Treating both the acts in question as private, as counsel insist we shall, the case of the petitioners for a rehearing falls to the ground, the baseless fabric of a vision.

We have said that the case was clear to 1838. There is no proof evidencing that the corporation has since ceased to exist. On the contrary, the record shows that in 1844 her board of trustees employed counsel, commenced suits, &c., and the act of 1846 recognizes an existing *de facto* board. It provides that the "board of trustees of the *Vincennes* university," &c. Now, if this acting board was not a legal one, it devolved upon the state to show it. She has not.

Another point. It is contended that the plaintiff's bill does not sufficiently charge an ouster, and is, therefore, defective. It was not objected to below for this cause, and it can not be here; for the act authorizing the suit admits the ouster, and that act is expressly made a part of the answer. In the sixth section it provides that "for the purpose of entering a final decree in the premises, [the Court] may consider the state of *Indiana* as standing in the place of the present claimants *now in possession of said lands by virtue of purchases from this state.*"

Were the bill defective, therefore, as alleged, a fact we do not admit, the answer cures the defect.

The bill, answer, and act of the legislature show an ouster, but do not fix the time when it took place. This omission is supplied by the testimony of Mr. *Judah*. Objection is made to his evidence. But it is of a character such as is every day observed in our Courts. Witnesses are called to state as to points of time and of value, wherein they say they can not state precisely from actual knowledge, but are told to come as near as they can from all the facts they may be acquainted with, according to the best of their belief and judgment; and such evidence goes to the jury.

Again. It is said the rule that a judicial sentence of forfeiture must be shown against a corporation when the question arises collaterally, does not apply in this case where the state is the party sued by the corporation. Admit

this to be true; still, in this latter case, a state of facts
which would induce such a sentence in a direct proceed-
ing, must be presented.  Such a state has not been here
presented.  We admit that the act authorizing the suit
allows the state to contest the corporate existence of the
Vincennes university; but she has not, in fact, availed her-
self of the privilege of doing it in the mode necessary in
this case, viz., by showing a forfeiture.  Suppose the state
had instituted proceedings to procure a judicial declaration
of forfeiture; how would she have done it?  Would not
charges, specifications, have been filed against the board
of trustees, showing how, wherein, by what acts of omis-
sion or commission, the charter had been forfeited, that the
trustees might have known what they were called to an-
swer to?  And, having made the charges, the burden of
proof would have devolved upon the accusing party.  But
where are the charges in the present record against the
Vincennes university?  What is set up in the answer, or
a cross bill against that corporation?  Nothing.  Not a
charge is made.  The question on the forfeiture of the
charter of that university is not made.  There is no proof
against it, and could be none, because there is no charge;
and in legal proceedings charges and proofs must corres-
pond.

Had the charter been actually surrendered, or had there
been no de facto board of trustees, these facts, as also a
judicial sentence of forfeiture, could have been shown
under the pleadings now in the record.

It is in this petition also for the first time objected that
the Court can not make a decree in the premises.  The
whole scope of the act under which this suit is pending,
shows that it was the intention that the Court should
make a decree for the amount of the fund to which the
Vincennes university might be entitled under the act; and
the act expressly declares that the Court shall "enter a
final decree in the premises."  We think this a far-fetched,
frivolous objection.

On the subject of the statute of limitations, we see oc-
casion for the addition of but this single remark: that we

understand the law to be (which in this particular, at least, may be called the perfection of reason and justice) that when the state, by her legislature, makes a contract with individuals or an individual, which is within the scope of her powers, that contract is to be executed in good faith, according to the understanding and intention of the parties in making the contract.

*Per Curiam.*—The petition for a rehearing is overruled.