# Dudley *v.* Collier & Pinckard.

*Action for Compensation under Special Contract.*

1. *Foreign corporations; constitutional and statutory restrictions on right to do business here; action by agent on contract violative of.*—An agent of a foreign corporation engaged in the business of lending money on mortgages, not having complied with the conditions imposed by constitutional and statutory provisions on the right to do business in this State (Const. Ala , Art. xiv, § 4; Sess. Acts 1886-7, pp. 102-04), can not maintain an action to recover compensation agreed to be paid him for procuring a loan from the corporation.

APPEAL from the Circuit Court of Lowndes.
Tried before the Hon. JOHN MOORE.

WATTS & SON, and WILLIAMSON & WILLIAMS, for appellant, cited *Amer. U. Tel. Co. v. Western U. Tel. Co.*, 67 Ala. 26; *Smith v. Insurance Co.*, 4 Ala. 558; *Lindsey v. McGehee*, 6 Ala. 16; *Morrell v. Quarles*, 35 Ala. 544; *Walker v. Gregory*, 36 Ala. 180; *Oxford Iron Co. v. Spradley*, 46 Ala. 98, and 51 Ala. 171; *Speed v. Cocke*, 57 Ala. 209; *Ware v. Jones*, 61 Ala. 288; *Pac. Guano Co. v. Dawkins*, 57 Ala. 115; *Mullen v. Pac. Guano Co.*, 66 Ala. 582; *Robertson v. Hayes*, 83 Ala. 290; *Woods v. Armstrong*, 54 Ala. 150; *Lee v. Cassen*, 61 Ala. 312; Chitty on Contracts, 982, note; 2 Parsons on Contracts, 673–4; *Robertson v. Robinson*, 65 Ala. 610; *Ware v. Curry*, 67 Ala. 274; *Toler v. Armstrong*, 11 Wheat.; 13 Amer. Rep. 737; 44 Penn. St. 9.

ROQUEMORE, WHITE & LONG, and W. R. HOUGHTON, *contra.*

SOMERVILLE, J.—The suit is brought by the appellees, for a stipulated compensation agreed to be paid them by the appellant, Dudley, for services rendered in procuring a loan of money for his use.

The court sustained a demurrer to the sixth, seventh and

ninth pleas jointly, and this ruling is assigned as error. If either of these pleas constituted a good defense, the ruling is erroneous.

The sixth plea avers that "the loan and contract of borrowing were to be made with a foreign corporation, company or association, having no authority to do any business within the State of Alabama, and that an agreement to pay the borrowed money and interest thereon, and to make a mortgage upon lands in this [Lowndes] county [Alabama], was to be made with a foreign corporation, located in Great Britain, known as the                                         of London, England; and the said corporation had no known place of business, nor authorized agent within the State of Alabama, and had never been authorized, under the laws of Alabama, to do business within the State of Alabama, and that the plaintiffs were in fact the agents of such corporation."

It is declared in Art. XIV, section 4 of our present Constitution, that "no foreign corporation shall do any business in this State, without having at least one known place of business, and an authorized agent or agents therein."— Const. 1875, Art. XIV, § 4. We have construed this to be a police regulation, "just as much," we said, "a police regulation for the protection of the property interests of the citizens of the State, as a law forbidding vagrancy among its inhabitants."—*Amer. Un. Tel. Co. v. West. Un. Tel. Co.*, 67 Ala. 26; s. c., 42 Amer. Rep. 90. The General Assembly passed an act approved February 28, 1887, to give force and effect to this section of the Constitution, in which it required that every foreign corporation or company, before engaging in business in this State, shall file in the office of the Secretary of State an instrument in writing, under seal of such company, and signed officially by the president and secretary, "designating at least one known place of business in the State, and an authorized agent or agents residing thereat." It is declared that "it shall not be lawful" for any person to act as agent, or transact any business, directly or indirectly, for or on behalf of any such company or corporation, until this requirement is complied with. Any one who shall act as such agent, or transact any business for such foreign company, without having first complied with such requirement, is subjected a penalty of five hundred dollars, payable to the State. The company itself that transacts or engages in any business in this State, before filing such in-

strument, is liable to a penalty of one thousand dollars.—Acts 1886-87, pp. 102-104.

The contract for services here sued on bears date March 8th, 1887, and is therefore subsequent to the foregoing prohibitory enactment. The case, then, is reduced simply to this, assuming the facts stated in the plea to be true, as admitted by the demurrer. The plaintiffs are the agents of a foreign corporation, which has failed to comply with the requirements of this statute. Neither the corporation nor the agents, therefore, are authorized to transact any business in Alabama. A loan or borrowing of money, by or from such company, in this State, is an unlawful act, subjecting both the agents and the company to a heavy penalty. The services here sued for are for the doing of this prohibited act. The consideration of the defendant's promise is an act in express violation of the Constitution and laws of Alabama. The contract to pay for such illegal services is itself necessarily illegal, as a promise made in consideration of an act forbidden by law; and being executory, the courts will not lend their aid to its enforcement.

It is an established rule of law, supported by uniform authority, that when a statute goes no further even than to impose a penalty for the doing of an act, a contract founded on such act as a consideration is void, although the statute does not pronounce it void, nor expressly prohibit it.—*Woods v. Armstrong*, 54 Ala. 150; 25 Amer. Rep. 671, and *note*, 675-678. In the present case, there is both a penalty and an express prohibition.

In *Woods v. Armstrong*, *supra*, it was accordingly held, where a statute of this State imposed a penalty for selling any fertilizer which had not been inspected, analyzed and stamped in the mode prescribed by law, a note given for the purchase-money of such fertilizer sold in violation of this requirement was void. This ruling has been followed by us in many other cases.

In *Milton v. Haden*, 32 Ala. 30, a note given for the lease of a ferry was held void, on the ground that the lessor had no license, and the running of an unlicensed ferry was prohibited under penalty.

In *Harrison v. Jones*, 80 Ala. 412, we held that no recovery could be had for medical services rendered by an unlicensed physician, the practice of medicine in this State without such license being impliedly prohibited by a penalty. This ruling rests upon the general principle, that when a

statute forbids under a penalty, or otherwise, the carrying on of any particular business without a license, a contract made for services rendered, or goods sold, in violation of the requirements of such statute, is void; especially if it appears that the object of the legislature was for police purposes, and not solely for the purpose of raising revenue; or, in other words, where the legislative intent, in imposing the condition, was "the maintenance of public order or safety, or the protection of the persons dealing with those on whom the condition is imposed." Such, at least, seems to be the better and later view, sustained by the more recent authorities.—3 Amer. & Eng. Ency. Law, 872; Bishop on Contr. § 547; Greenhood on Public Policy, 580-583. Mr. Wharton states the rule as follows: "When a statute imposes a penalty, not as a tax, but as a punishment, then a contract to do the thing on which the penalty is imposed is ordinarily unlawful; and so when an act is absolutely prohibited. And when conditions on the exercise of a business are imposed in a statute for the maintenance of public order, or the protection of parties, or on grounds of public policy, the contracts by such persons, in violation of the statute, are void."—1 Whart. Contr. § 365; *Melchoir v. McCarty*, 11 Amer. Rep. 605; *Robertson v. Hays*, 83 Ala. 290; *Prescott v. Battersby*, 119 Mass. 285; *Burton v. Hamblen*, 32 Me. 448.

In the present case, it is perfectly manifest that the act of February 28, 1887, above cited, does not contemplate the assessment of the penalties imposed for revenue, but only for punishment. It is even provided that, in case of non-payment of such penalties, the offending party shall be imprisoned, or sentenced to hard labor, for a period not exceeding six months.—Acts 1886-7, p. 10.

The case of *Thorne v. Traveller's Ins. Co.*, 80 Penn. St. 15; Amer. Rep. 89, is one not unlike this in principle. The statutes of Pennsylvania provided, that any foreign insurance company, desiring to transact business in that State, should first appoint a resident agent in that State, on whom process could be served, and file in the office of the Auditor-General a certified appointment of such agent, and a copy of the company's charter. A written application for a license to transact business in the State, signed by such agent, was also required to be filed in some public office, with a bond of the agent with a specified sum, with resident securities, approved in the mode and on the conditions prescribed. An agent

[Dudley v. Collier & Pinckard.]

who transacted any insurance business in the State for such foreign company, without previous compliance with the provisions of the statute, including the procuring of the license, was made guilty of a misdemeanor, and subjected to a fine of five hundred dollars. The conditions of the statute not having been complied with by the plaintiff insurance company, it was held that a suit against the agents and the sureties on his bond would not lie, for moneys collected by the agent in the course of his agency. The principle on which this conclusion was based is, that the doing of the business by the agent was expressly prohibited by the statute, and was authorized by the company, and that no recovery could be had on the bond without proving that the company and the agent had both violated the law; or, in other words, without the aid of the illegal transaction the company had no case.

Under the principles settled by the foregoing authorities, to which many others might be added, we are of opinion that the facts stated in the sixth plea constituted a good defense to the action, showing that the contract of loan was one in violation of the statute, and void, therefore, for illegality. The promise of the defendant as a consideration for procuring such a loan was equally illegal and void, as an agreement to pay for the doing of an act prohibited by law, and punishable by a penalty.

Analogous statutes in other States regulating the doing of business by foreign corporations have been frequently construed by the highest courts of those States in accordance with the views which we have above expressed.—*Cincinnati Assur. Co. v. Rosenthal*, 55 Ill. 85; *Ætna Ins. Co. v. Harvey*, 11 Wisc. 394; *Hoffman v. Banks*, 41 Ind. 1; *Union Cent. Life Ins. Co. v. Thomas*, 46 Ind. 44; *Bank v. Page*, 6 Oreg. 431; *In re Comstock*, 3 Sawy. (C. C.) 218; *Semple v. Bank*, 5 Ind. 88; *Williams v. Cheney*, 3 Gray, 215; *Jones v. Smith*, Ib. 500; 2 Morawetz on Corp. (2d Ed.) §§ 661-665.

Whether a foreign corporation, when sued, could take advantage of its own failure to comply with the requirements of the statute by setting up the invalidity of its contract, presents another question, which does not arise in this case. *Brooklyn Life Ins. Co. v. Bledsoe*, 52 Ala. 538.

The case of *Sherwood v. Alvis*, 83 Ala. 115; 3 Amer. St. Rep. 695, was based on a transaction occurring prior to the enactment of the above statute enforcing the constitutional provision; and what was said in that case, in reference to the

[Woodstock Iron Co. v. Roberts.]

effect of this statute, was not necessary for the decision of the case. The mortgage securing the loan, moreover, had been foreclosed under the power of sale, so as to cut off the equity of redemption, and the transaction was, in a measure, an executed contract. We held that, in such a case, an action of ejectment for the land purchased at the mortgage sale would lie by the purchaser. That case is, on these and other grounds, distinguished from this.—*Elston v. Piggott*, 94 Ind. 14.

The court erred in sustaining the demurrer to the pleas; and for this error, the judgment must be reversed, and the cause remanded.

Reversed and remanded.