## DENSON et al. v. CHATTANOOGA NAT. BUILDING & LOAN ASS'N.

(Circuit Court of Appeals, Fifth Circuit.    April 16, 1901.)

### No. 1,028.

FOREIGN CORPORATIONS—BUILDING AND LOAN ASSOCIATIONS—LOAN IN VIOLA-
TION OF LAW—EFFECT AS TO REPAYMENT.

A loan by a Tennessee building and loan association, through a traveling soliciting agent, to a resident of Alabama, where all the business in connection therewith was transacted, with the single exception of the association's assent thereto, made when the association had no place of business and authorized local agent in the state, is a violation of Const. Ala. art. 14, § 4, and Code 1896, §§ 1316, 1318, 1319, enacted pursuant thereto, prohibiting foreign corporations from doing "any business" in the state without at least one known place of business and an authorized agent therein, and hence repayment of the loan cannot be enforced.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

W. H. Denson, in pro. per.
J. B. Sizer, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge.    The contention herein is that the contract sought to be enforced by the bill is illegal on account of the failure of complainant to comply with the laws of Alabama prescribing the conditions under which foreign corporations may do business in that state.    The laws in question are:

"Sec. 4. No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein; and such corporation may be sued in any county where it does business by service of process upon an agent anywhere in this state." Const. Ala. art. 14.

"1316. Foreign corporations must file instrument of writing designating agent and place of business in this state.—Every corporation not organized under the laws of this state shall, before engaging in or transacting any business in this state, file an instrument of writing, under the seal of the corporation and signed officially by the president and secretary thereof, designating at least one known place of business in this state and an authorized agent or agents residing thereat; and when any such corporation shall abandon or change its place of business as designated in such instrument, or shall substitute another agent or agents for the agent or agents designated in such instrument of writing, such corporation shall file a new instrument of writing as herein provided, before transacting any further business in this state."    Code Ala. 1896.

"1318. Unlawful for foreign corporation to transact business in this state before declaration filed; penalty.—It is unlawful for any foreign corporation to engage in or transact any business in this state before filing the written instrument provided for in the two preceding sections; and any such corporation that engages in or transacts any business in this state without complying with the provisions of the two preceding sections shall, for each offense,

forfeit and pay to the state the sum of one thousand dollars." Code Ala. 1896.

"1319. Unlawful to act as agent of foreign corporation before such declaration is filed; penalty.—It is unlawful for any person to act as agent or transact any business, directly or indirectly, in this state, for or on behalf of any foreign corporation which has not designated a known place of business in this state and an authorized agent or agents residing thereat, as required in this article; and any person so doing shall, for each offense, forfeit and pay to the state the sum of five hundred dollars." Code Ala. 1896.

The complainant below, the Chattanooga National Building & Loan Association, is, and was at the time the loan to Mr. Denson was made, a corporation under the laws of the state of Tennessee, with its principal office in the city of Chattanooga, in that state. Among its corporate functions was the authorization, and, so far as we are advised, its sole business was, to loan its funds to its stockholders on real-estate security. It had no local office or agent in Alabama, but it had a traveling agent, whose business it was to solicit subscriptions to its stock, and to obtain applications for loans, and submit the same to the home office of the association at Chattanooga. On the 25th of April, 1895, appellant Denson, who was a resident of Gadsden, Ala., on the suggestion and at the solicitation of the agent, signed at that place a written application for 50 shares of stock in the association, complainant below, appellee in this court. This application was forwarded by the agent to whom Mr. Denson delivered it to the home office, where the stock was issued, and returned to the agent, to be by him delivered to Mr. Denson. On the same day on which he applied for his stock, Mr. Denson signed a written application to the association for a loan of $2,500 on the 50 shares of stock he had applied for. He offered a premium of $2,500 for the loan, and proposed to secure the loan and premium, if his application should be granted, by a mortgage on certain real estate in Gadsden, Ala., which he represented to be of the value in all of about $9,000. This application was accompanied by the report of two parties, selected by the association, fixing the value of the property which Denson proposed to mortgage at $8,000, and the certificate of an attorney, also selected by the association, with reference to the condition of the title. This application was forwarded by the agent to the home office in Chattanooga, where it was submitted, along with other applications, to the board of directors, by whom the application was granted, and the loan directed to be made in accordance with the charter and by-laws of the association. Thereupon a note and deed of trust were prepared at the home office, and were sent to the agent by whom Mr. Denson's application had been taken and forwarded; and at the same time the check of the association on the Chattanooga National Bank of Chattanooga, Tenn., in favor of W. H. Denson, for the sum of $2,367.50, was sent to one D. P. Goodhue, of Gadsden, with instructions to him to deliver said check to Mr. Denson when he should have executed and delivered the note and deed of trust. Upon the execution of the note and deed of trust by Denson and wife, and the delivery of the same to the agent, all at Gadsden, Ala., the agent delivered to Denson the check for $2,367.50, directing him to present the same to the

First National Bank of Gadsden, which would pay the same. The check was presented to the said bank, and the face thereof paid over to Denson, as the cashier said, "under an understanding with the said building and loan association, and that the Chattanooga National Bank, on which the check was drawn, would pay the same on presentation." The note given to the association by Denson is dated at Chattanooga, Tenn., and is made payable at the home office of the association in Chattanooga; and it expressly stipulates that it "is made with reference to and under the laws of the state of Tennessee." The secretary of the association gives the following significant evidence:

"At the time the loan to defendant Denson was made, complainant association had been for some time soliciting subscriptions to stock and receiving applications for loans in the state of Alabama, and had paid a tax or license fee required under the laws of the state of Alabama for foreign corporations proposing to do business in that state: and complainant's officers supposed and understood that the payment of this fee or tax was the only condition with which it was necessary for them to comply in order to be entitled to do business in that state. Subsequently, however, and some months after the loan to defendant Denson was made, complainant was informed by an attorney in the state of Alabama that the Alabama statutes required foreign corporations doing business in Alabama to designate a local agent on whom process against the association could be served, and also a local place of business in that state. Thereupon complainant promptly designated such local agent and place of business, and continued up to the 2d of October, 1899, to pay the license tax or fee required of nonresident corporations doing business in Alabama, and to keep a local agent and place of business in that state."

The question presented in this case is not under the laws of which state is the contract of loan to be construed, nor in what place was the money loaned to be repaid, and this eliminates from the necessary consideration of this case very many of the adjudged cases cited in the briefs on both sides; and we may say with regard to the remaining cases cited that it is impossible to reconcile them with each other, and that (as is generally the case where the courts have in mind to compel the payment of an honest debt as against prohibitory laws) the application and construction of the particular prohibitory laws and the reasons given therefor should generally be restricted to the individual case, and for other cases considered to be more or less instructive, but never conclusive. On the facts as recited in the present case it is perfectly clear that all the business of loaning money to Denson, with the single exception that the association in Tennessee said, "Yes," was transacted in the state of Alabama, and that the contract was completed by the execution and delivery of a note and deed of trust and the payment of the money loaned, all in the state of Alabama; and the same was "doing the business for which the association was incorporated," within the meaning of the constitution and laws of the state of Alabama, as above quoted. And it may be said, if all this be not the doing of business of a foreign corporation within the prohibition of the constitution and laws of Alabama, then the National Building & Loan Association of Chattanooga, and other foreign associations engaged in the same business of loaning money on real security, may safely flood the state of

Alabama with soliciting agents, make all the negotiations for loans, take real-estate securities therefor, and fully transact all other business pertaining to their corporate functions as though incorporated therein, and yet neither be obliged to have a known place of business or any authorized agent within the state, nor pay any license tax or fee, as required of nonresident corporations doing business therein. To show the construction and effect of the constitution and laws of Alabama regulating the transaction of business within the state by nonresident corporations, we cite from the decisions of the Alabama supreme court, which are without conflict on the subject:

"The real test is that applied in Beard v. Publishing Co., 71 Ala. 60: Is the corporation engaged in the transaction of business, or any part thereof, it was created and organized to transact? If it be, it 'does business' within the meaning of the constitution. If it be not,—if the act it is doing or has done is not within its general powers and franchises,—it is not the business to which the constitutional requirement is directed." Sullivan v. Timber Co., 103 Ala. 371, 380, 15 South. 941, 25 L. R. A. 543.

"The business upon the doing of which the plaintiff relied for a recovery was the loan of money by the defendant to a resident citizen of this state; the taking of a mortgage upon land of the borrower, situated in this state, to secure the debt, which was evidenced also by promissory notes, with separate notes for installments of the interest. Under the constitution and the statute a single act of business done without complying with the prescribed conditions is a violation of both. There need not be a carrying on of business. The loan of money here and the taking here of notes and mortgage to secure repayment, the mortgage being on land situated in this state, is the doing of business here, within both the constitution and the statute. Ginn v. Security Co., 92 Ala. 135, 8 South. 388; Farrior v. Security Co., 88 Ala. 275, 7 South. 200; Mullens v. Mortgage Co., 88 Ala. 280, 7 South. 201. And the facts that the notes and mortgage are executed here, though they may be payable elsewhere, and the land embraced in the mortgage is situated here, are sufficient to show prima facie that the transaction involves the doing of business by the lender and mortgagee in the state of Alabama. Farrior v. Security Co., 88 Ala. 275, 7 South. 200; Mullens v. Mortgage Co., 88 Ala. 280, 7 South. 201." State v. Bank, 108 Ala. 3, 6, 18 South. 533.

And as a further instructive case on the subject:

"The bill alleges that the complainant corporation, 'under its charter and laws of incorporation, had full power and authority' to loan the money and take the mortgage in controversy. In engaging in such a transaction, the complainant was in the exercise of its chief corporate function, as imported by its very name, and as admitted by the bill. The prohibition of the constitution is against 'doing any business in this state' without compliance with the conditions specified. The doing of a single act of business, if it be in the exercise of a corporate function, is as much prohibited as the doing of a hundred such acts; and it is just as much opposed to the policy of the constitution, which is to protect our citizens against the fraud and imposition of insolvent and unreliable corporations, and to place them in an attitude to be reached by legal process from our courts in the event of any existing necessity to bring suit against them to vindicate a legal right, or to contest the validity of any contract made by or with them. The phrase 'doing any business' is more comprehensive in meaning than the carrying on or engaging in business generally, which involves the idea of continuance, or the repetition of like acts. All the adjudged cases, so far as we have examined, in and out of this state, assume this to be true, except the case of Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; 2 Mor. Priv. Corp. (2d Ed.) §§ 661, 665, and cases cited. There it was said that a clause in the constitution of Colorado, like the one here under consideration, was not to be construed to prohibit a single act, but only 'the carrying on of business' by a foreign corporation. The act there done was the making of a

contract in Colorado, to manufacture certain machinery in Ohio, to be delivered in the latter state for transportation to the purchasers in the former. The promise was a mere agreement to deliver goods in another state, and possibly was not the unlawful exercise of a corporate function. Beard v. Publishing Co., 71 Ala. 60. However that may be, we do not concur in the construction given, in which also two of the judges of the court rendering the decision, it seems, did not agree. Their concurrence in the judgment was placed solely on the ground that the prohibition contained in the Colorado constitution, when directed against a sale of that character, would be an attempted regulation of commerce between the states, and on this account void for repugnancy to the federal constitution. In Dudley v. Collier, 87 Ala. 431, 6 South. 304, we discussed at some length this clause of our constitution, and the act of the legislature seeking to carry it into effect by the imposition of penalties on offending parties. We there distinguished Sherwood v. Alvis, 83 Ala. 115, 3 South. 307, as involving the case of a foreclosed mortgage, by which the contract in question had become, in a measure, fully executed between the parties. This distinction is recognized also in the more recent deliverance of Craddock v. Mortgage Co. (decided at the present term) 7 South. 196, which was determined on the authority of that case. The legislative act cannot change the construction or meaning of the constitutional clause under consideration. It may throw light on its construction, and render its enforcement more effective; but it can neither add to nor take from the legal significance of its meaning, which was the same before as after the date of the enactment designed to give vigor to its execution. But the statute may be looked to as a legislative interpretation of the constitutional clause, and, as such, is entitled to much weight. Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Ex parte Hardy, 68 Ala. 303. This case, in our judgment, must be governed by the rule declared in Dudley v. Collier, supra. The loan of the money by complainant to the defendant was an act of corporate business, which was prohibited by the constitution; and this illegal act was the consideration of the defendant's promise to pay the borrowed money. The promise, therefore, was void, and, being executory, the courts will not lend their aid to its enforcement; for this would be a subversion of a regulation made for the public good. Apparent injustice, it is true, often follows from the application of provisions of this nature, by which contracts are annulled for illegality, or as obnoxious to good morals, or violative of public policy, or for repugnancy to positive statutes. But the law does not allow this result for the benefit of either of the offending parties as being less censurable or more favored than the other. It only lets the parties who are in equal fault severely alone, as the surest mode of securing obedience to the authority of its mandates." Farrior v. Security Co., 88 Ala. 275, 278, 279, 7 South. 200.

Following the proper rule, as declared in the last-cited case,—i. e. to "let the parties who are in equal fault severely alone,"—the decree of the circuit court is reversed, and the cause is remanded, with instructions to dismiss the bill.