DAHL IMPLEMENT & LUMBER COMPANY, a Corporation, Respondent, v. E. A. CAMPBELL, P. J. Campbell, and Wm. Andrews and John Huffman, Appellants.

(178 N. W. 197.)

**Corporations — soliciting of business generally by foreign corporation not an "isolated transaction."**

In an action brought upon promissory notes given in payment for a second-hand threshing rig and to foreclose a chattel mortgage securing the same, where it appears that the plaintiff is a foreign corporation which has not complied with § 5238, Comp. Laws 1913, and where the defendants rely upon an attempted rescission of the contract for misrepresentation and fraud and also seek damages for breaches of warranty, it is *held:*

1. Where a foreign corporation, with its principal office in a town in a sister state near the state line, is shown to have solicited business generally in tributary territory within this state, any transaction consummated by it in furtherance of its business is not an "isolated" transaction within the rule that single or isolated transactions do not violate § 5238, Comp. Laws 1913, which prohibits the doing of business in this state by foreign corporations without first filing a copy of their charter.

**Commerce — state constitutional and statutory provisions held not to authorize burdens on interstate commerce.**

2. Section 136 of the Constitution, and §§ 5238, 5240, 5242 and §§ 4518 and 4521, Comp. Laws 1913, as amended by chapter 99 of the Session Laws of 1917, and chapter 4 of the Laws of the Special Session of 1918, all of which relate to the authority of foreign corporations to do business in this state and to the effect of the failure to secure the privilege and to file an annual statement with the secretary of state, are construed in the light of article 1, § 8, of the Constitution of the United States, relating to interstate commerce; and it is *held* that the state has no power to impose conditions, restrictions, or burdens upon interstate commerce in the absence of congressional authority.

**Commerce — statute regulating foreign corporations will be construed to apply only to intrastate business.**

NOTE.—As to whether a single isolated transaction by foreign corporation is doing business within the state, see note in 10 L.R.A.(N.S.) 693.

As to whether soliciting trade by foreign corporation is doing business within the state, see note in 9 L.R.A.(N.S.) 1214; 23 L.R.A.(N.S.) 834; L.R.A.1916E, 236; and 6 B. R. C. 801.

On sale by foreign corporation of goods stored in state as interstate business, see note in 18 L.R.A.(N.S.) 134.

3. Where a statute purports to prohibit a foreign corporation from "doing any business within this state," and its application to interstate commerce would impose a condition or burden upon interstate commerce prohibited by the Federal Constitution, the statute will be construed as applicable only to the transaction of intrastate business.

**Commerce — foreign corporations "interstate commerce" held not prohibited by state statutes.**

4. Where a foreign corporation sells within this state goods located in another state, where it has its principal place of business, which sale is followed by delivery and transportation to this state, the transaction is one in interstate commerce, which is not prohibited by the statutes above referred to.

**Sales — evidence not showing seller's misrepresentation of fact, justifying rescission of contract.**

5. The evidence is examined, and it is *held* that it does not warrant a finding of misrepresentation of fact which would justify a rescission of the contract.

**Sales — evidence held to show warranty and seller's breach thereof.**

6. It is further *held* that the defendants have established a warranty respecting the ability of the engine to do the work for which it was purchased, and damages for breach of that warranty.

Opinion filed March 24, 1920.

Appeal from District Court of Richland County, *Allen,* J.

Modified and affirmed.

*W. S. Lauder,* for appellants.

"A corporation can have no legal existence out of the boundaries of the sovereignty by which it is created," and the corporation can make no valid contract without the sanction, express or implied, of the sovereignty in which the contract is made." Paul v. Virginia, 8 Wall. 68–131; Washburn Mill Co. v. Bartlett, 3 N. D. 138; 2 Morawetz, Priv. Corp. § 958; Waters, etc., Co. v. Texas, 177 U. S. 28; Reimers v. Seatco Mfg. Co. 79 Fed. 373; 12 R. C. L. pp. 6 et seq. and the cases cited under note 12; Doyle v. Continental Inst. Co. 94 U. S. 355.

There is in this case no question of interstate commerce. 7 Cyc. p. 416, subd. 5; State Freight Tax Case, 82 U. S. 232; American Starch Co. v. Bateman (Tex.) 22 S. W. 771; Erie R. Co. v. State, 31 N. J. L. 531, 86 Am. Dec. 226.

"Interstate commerce would not include a contract for the sale of goods between citizens of different states, where no transfer of property from

one state to another was included in the transaction." Reed v. Walker (Tex.) 21 S. W. 677.

Inconsistent defenses may be pleaded in the same answer. Lawrence v. Peck (S. D.) 54 N. W. 808; Stebbins v. Lardner (S. D.) 48 N. W. 847; Green v. Hughitt Twp. (S. D.) 59 N. W. 224; Irmsby v. Ins. Co. (S. D.) 58 N. W. 301; Minnesota Thresher Co. v. Schaack (S. D.) 74 N. W. 445; Westphal v. Nelson, 125 N. W. 640.

*Wolfe & Schneller,* for respondent.

BIRDZELL, J. This is an action brought upon two promissory notes which were given by the defendants in payment for a threshing rig purchased of the plaintiff in July, 1918, and to foreclose a chattel mortgage securing the notes. The defendants plead breaches of warranty, claiming also the right of rescission for misrepresentations and fraud. They also counterclaim, asking damages for the breaches of warranty. As a further and independent defense, it is alleged that the plaintiff is a corporation existing under the laws of the state of South Dakota, having its office and place of business at the village of White Rock, about 1 mile south of the state line separating the states of North and South Dakota. Also that for the period of approximately ten years the plaintiff had engaged in the business of selling agricultural implements, and at the time of the transaction in question was so engaged in transacting business in the state of North Dakota, employing agents and representatives to canvass within the state. It is averred that the sale of the rig in question to the defendants was a part of the general business carried on within the state of North Dakota, and that the plaintiff never complied with the laws of this state.

Upon the trial in the court below it was found that the plaintiff was a foreign corporation, and had not secured a license to do business in North Dakota; that the transaction in question was consummated in North Dakota, although the notes were dated and made payable at White Rock, South Dakota. It was found that this was the only business transaction on the part of the plaintiff in connection with which anything was done within this state. It was further found that there were no warranties proved; that the purchasers relied upon their own skill and judgment after ample opportunity for inspection and after the making of such tests as defendants required. Judgment was entered for the full amount .

owing by the defendants. This appeal is from the judgment, and the matter is here for a trial *de novo*.

The first question for consideration is the effect of the failure of the plaintiff to comply with the sections of our statutes governing the transaction of business in this state by foreign corporations. The substance of the legal requirements may be stated as follows: Section 136 of the Constitution provides: "No foreign corporation shall do business in this state without having one or more places of business and an authorized agent or agents in the same, upon whom process may be served." Section 5238, Comp. Laws 1913, prohibits the transaction of any business within this state by any foreign corporation "until such corporation shall have filed in the office of the secretary of state a duly authenticated copy of its charter, articles of incorporation, and by-laws," and shall have complied with the other provisions of the chapter. Section 5240, Comp. Laws 1913, requires the filing in the office of the secretary of state of an appointment designating that officer as the attorney upon whom process may be served in any action or proceeding against it. Section 5242 provides: "Every contract made by or on behalf of any corporation, association or joint stock company, doing business in this state, without first having complied with the provisions of § 4913, if an insurance company, or with the provisions of §§ 5238 and 5240, if other than an insurance company, shall be wholly void on behalf of such corporation, association or joint stock company and its assigns, but any contract so made in violation of the provisions of this section may be enforced against such corporation, association or joint stock company."

The statute is explicit in declaring that any contract made by a corporation which has not complied with the requirements is void. It can only be given effect by refusing to treat any contract made by a noncomplying corporation as having any validity when the same is made the basis of an action in court. We are not, therefore, concerned with the status of a domestic contract entered into by a foreign corporation and a resident of the state under common-law principles or even under statutory provisions, which, though requiring some sort of license, do not expressly state the effect of the failure to secure one. 12 R. C. L. 83, 84; Beale, Foreign Corp. §§ 212, et seq.

In addition to the above provisions it seems that foreign corporations are required to file an annual statement or report with the secretary of

state, and to pay therefor a fee of $2.50 at the peril of having their authority to transact business in the state canceled. See §§ 4518 and 4521, Comp. Laws 1913, as amended by chap. 99, Sess. Laws 1917, and chap. 4 of the Laws of the Special Session of 1918.

. Did the plaintiff corporation transact business in North Dakota within the statutes referred to?. The finding of the trial court, which has been previously referred to, is to the effect that it did not; the finding being that, so far as the evidence discloses, the transaction at bar constitutes the only business done in North Dakota. If this finding is correct under the evidence, it may well be that, under the interpretation adopted in prior decisions (State use of Hart-Parr Co. v. Robb-Lawrence Co. 15 N. D. 55, 106 N. W. 406; Sucker State Drill Co. v. Wirtz, 17 N. D. 313, 18 L.R.A.(N.S.) 134, 115 N. W. 844), no statute has been violated and the contract is valid. But the evidence does not, in our opinion, warrant the finding as a finding of fact. Without referring to other testimony, we may safely take that of Dahl, who appears to have been both an officer and general manager of the Dahl Implement & Lumber Company. This shows, rather, that the transaction in question was consummated in the ordinary course of business. According to his testimony, it would seem that the plaintiff made no distinction in the transaction and solicitation of its business in the territory tributary to the village of White Rock, South Dakota, based upon the existence of the state line; that wherever it appeared to Dahl to be advantageous he would solicit, and, if possible, consummate sales in North Dakota as well as in South Dakota. It is true that no other sale is proven as a matter of fact. But it is also true, and in fact not disputed, that the transaction in question resulted from the ordinary pursuit of the plaintiff's ordinary business. From the fact that no other sales were proven to have been consummated in like manner, we cannot assume that this is the only sale or the first sale (if that is important) where the record shows that the corporation was as keen to transact its business in North Dakota as in South Dakota. While it is true that the prohibition is from the doing of business, and that, as is frequently held, an isolated transaction does not amount to a doing of business, it is also true that where an ordinary pursuit of business is shown, no exception is made in favor of what may be the first transaction consummated.

As is said in Beale on Foreign Corporations (§ 205):

"Where, however, the foreign corporation enters upon a continuous line of business it is doing business within the state. . . ."

"It is not essential for the application of this principle that several acts of business should already have been done; if a regular business is contemplated, the corporation has begun to carry on business when it does its first business act."

The text continues, quoting from Mason, J., in John Deere Plow Co. v. Spatz, 69 Kan. 255, 76 Pac. 863, 2 Ann. Cas. 304, as follows: "Although the record in each case discloses but one transaction of the corporation, that transaction was not merely incidental or casual. It was a part of the very business to perform which the corporation existed. It did distinctly indicate a purpose on the part of the corporation to engage in business within the state, and to make Kansas a part of its field of operation, where a substantial part of its ordinary traffic was to be carried on. Therefore, although a single act, it constituted a doing of business in the state within the meaning of the statute, while several acts of a different nature might not have had that effect."

The foregoing is peculiarly applicable to the situation presented on this record, where it appears that the principal place of business of the plaintiff corporation was but a short distance over the state line, and that the corporation availed itself of the tributary territory in this state without regard to the state line. Under such a business practice any single transaction could not be said to be an isolated transaction within the rule applied by the trial court. The plaintiff, therefore, is not removed from the penalty of the statute because of the isolated character of the transaction in question.

In view of the plenary power delegated to Congress to regulate interstate commerce (U. S. Const. art. 1, § 8) and of the decisions of the United States Supreme Court which interpret the extent of the power thus granted, and define the implied limitations upon the powers of the states to impose conditions or restrictions upon interstate commerce, it is generally held that state statutes of the character of that under consideration in this case have no application to the interstate business of foreign corporations, or if they do purport to apply they are to that extent void. Vicksburg, S. & P. R. Co. v. DeBow, 148 Ga. 738, 98 S. E. 381; Belle City Mfg. Co. v. Frizzell, 11 Idaho, 1, 81 Pac. 58; Coit & Co. v. Sutton, 102 Mich. 324, 25 L.R.A. 819, 4 Inters. Com. Rep. 768, 60 N.

W. 690; Sucker State Drill Co. v. Wirtz, 17 N. D. 313, 18 L.R.A. (N.S.) 134, 115 N. W. 844; Toledo Commercial Co. v. Glen Mfg. Co. 55 Ohio St. 217, 45 N. E. 197; L. Miller & Co. v. Goodman, 91 Tex. 41, 40 S. W. 718; Texas & P. R. Co. v. Davis, 93 Tex. 378, 55 S. W. 562; Texas & P. R. Co. v. Davis, — Tex. Civ. App. —, 54 S. W. 381; Gale Mfg. Co. v. Finkelstein, 22 Tex. Civ. App. 241, 54 S. W. 619; Pasteur Vaccine Co. v. Burkey, 22 Tex. Civ. App. 232, 54 S. W. 804; Lane & B. Co. v. City Electric Light & Waterworks Co. 31 Tex. Civ. App. 449, 72 S. W. 425; Butler Bros. Shoe Co. v. United States Rubber Co. 84 C. C. A. 167, 156 Fed. 1; Robbins v. Taxing Dist. 120 U. S. 489, 30 L. ed. 694, 1 Inters. Com. Rep. 45, 7 Sup. Ct. Rep. 592; Leisy v. Hardin, 135 U. S. 100, 34 L. ed. 128, 3 Inters. Com. Rep. 36, 10 Sup. Ct. Rep. 681; International Textbook Co. v. Pigg, 217 U. S. 91, 54 L. ed. 678, 27 L.R.A.(N.S.) 493, 30 Sup. Ct. Rep. 481, 18 Ann. Cas. 1103; notes in 24 L.R.A. 311, 9 L.R.A.(N.S.) 1214, and 23 L.R.A.(N.S.) 834; Beale, Foreign Corp. § 250; 12 R. C. L. 74.

Under these authorities a construction of the language of our statute prohibiting foreign corporations from transacting "any business within this state" which would make it applicable to interstate as well as intrastate business would render it void as to the former. Such statutes are, therefore, generally construed as prohibiting the transaction of intrastate business only. (See the cases cited above.) A contrary interpretation of a Kansas statute by the supreme court of that state (see State ex rel. Shaween County v. American Book Co. 65 Kan. 847, 69 Pac. 563; John Deere Plow Co. v. Wyland, 69 Kan. 255, 76 Pac. 863, 2 Ann. Cas. 304; International Text Book Co. v. Pigg, 76 Kan. 328, 91 Pac. 74) led to a reversal of the decision last cited (International Textbook Co. v. Pigg, 217 U. S. 91, 54 L. ed. 678, 27 L.R.A.(N.S.) 493, 30 Sup. Ct. Rep. 481, 18 Ann. Cas. 1103), on the ground that the statute, as thus construed, was unconstitutional.

The principle of Paul v. Virginia, 8 Wall. 168, 19 L. ed. 357, and analogous cases (Bank of Augusta v. Earle, 13 Pet. 519, 10 L. ed. 274; Liverpool & L. Life & F. Ins. Co. v. Massachusetts (Liverpool & L. Life & F. Ins. Co. v. Oliver) 10 Wall. 566, 19 L. ed. 1029; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 28 L. ed. 1137, 5 Sup. Ct. Rep. 739; Fire Asso. of Phila. v. New York, 119 U. S. 110, 30 L. ed. 342, 7 Sup. Ct. Rep. 108, relied upon by the appellant, has been expressly held to be

not applicable to corporations engaged in interstate commerce. See Crutcher v. Kentucky, 141 U. S. 47, 35 L. ed. 649, 11 Sup. Ct. Rep. 851. See also concurring opinion of Justices Matthews and Blatchford in Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 28 L. ed. 1137, 5 Sup. Ct. Rep. 739. Also note Denson v. Chattanooga Nat. Buildg. & L. Asso. 46 C. C. A. 634, 107 Fed. 777, same case, 189 U. S. 408, 47 L. ed. 870, 23 Sup. Ct. Rep. 630.

The transaction in question in this case is not intrastate in its character, for it involves both the initial steps leading up to a sale of articles of commerce, which at the time of the sale were located in another state, and the final consummation of that sale by delivery, followed by transportation to this state. Every step in the transaction was in furtherance of interstate commerce, as that term is defined in numerous decisions of the United States Supreme Court. To visit the penalty, then, of § 5241 on the corporation conducting this transaction would be to render void a contract made in furtherance of a transaction in interstate commerce, and that without any authority of Congress. This the state is powerless to do, and we should not assume that such a consequence was intended. We therefore hold that § 5238, Comp. Laws 1913, does not prohibit a foreign corporation from carrying on a transaction or transactions in interstate commerce, such as that presented here, and that § 5241 has no application to contracts made by foreign corporations in carrying on such commerce.

It is next contended that the defendants have effected a legal rescission of the contract for fraud. The fraud relied upon as justifying the rescission consists of alleged misrepresentation and suppression of facts concerning the engine. The rig in question was a secondhand outfit that had been sold in 1913 to a farmer by the name of Snell, who lived east of White Rock, in Minnesota. He had used it some three years, and in the final settlement with the Dahl Implement Company it was turned back to the company, and had not been in use during 1916 and 1917. It is claimed that when Snell bought the engine it was sold to him as a new one, when in fact it was a built-over engine. Except for its value as a corroborative circumstance this fact is immaterial in this controversy, for the reason that the defendants did not plead that there was any misrepresentation concerning the description of the engine, when purchased by Snell, nor concerning its age.

The remaining contentions with respect to misrepresentations have to do with the condition of the engine at the time it was bought by the defendants, and with its ability to perform the work of properly running the separator. Statements of this character, if made by Dahl, would amount to warranties; and inasmuch as the defendants also set up breach of warranty, we shall consider the evidence bearing upon the alleged misrepresentations in connection with that defense.

It is claimed that the defendant represented the engine to be in A–1 condition and capable of going out in its then condition and doing the work of operating the separator; that the rig had always done good work and was capable of going out again in substantially its then present condition and doing good work.

The trial court found that the defendants E. A. Campbell and John Hoffman each had had several years of experience in running steam threshing machines, but of a different kind and make from that involved here; that all of the defendants had inspected the machinery fully before it was purchased, making all tests which they desired to make and buying the machinery in reliance upon their own judgment and ability to repair it and make it do the work for which it was bought. It was also found that the alleged warranties regarding the engine were not proven; and that under the evidence it appeared that, with reasonably competent management, the engine might be made to furnish the power required to run the separator at full capacity.

As before stated, the machinery was purchased early in July, considerable time before its use by the defendants would be required. The entire purchase price was $1,225. The price of such a rig new would have been $5,240. There is no dispute as to the fact that it was understood the defendants would have to make certain repairs upon the separator, such as the putting on of a new roof, etc. Neither is it disputed that they inspected the separator fully, and that, instead of the needed repairs being confined to the roof and certain minor matters, they found it necessary to put in some additional timbers to replace some that were found to have been rotted. Nor is it disputed that there was an agreement with reference to replacing the broken drive wheels on the engine, the plaintiff agreeing to furinsh wheels which had already been obtained for that purpose and put them on for $25. (This latter amount was added to the original consideration of $1,200.) The evidence further

shows beyond question that the defendants, at least two of whom had had considerable experience in operating threshing machines, not only had full opportunity to inspect the rig, but that they made several trips to White Rock for the purpose of satisfying themselves as to its condition. When they indicated a doubt as to whether the engine would stand the necessary steam pressure, either they or Dahl suggested that it be tested. They went to White Rock for that purpose, but by reason of defective packing about the hand holds of the boiler the test had to be abandoned that day, but a cold-water pressure test was made the following day in their presence by one Hawkinson, a boiler inspector of the state of Minnesota. It appears that the engine had not been used a great deal after the putting in of new flues, and that it stood the pressure test sufficiently to satisfy the purchasers. The engine was the type known as Minneapolis 27 H. P. Compound engine, which was no longer manufactured by the company that made it, and it appears that before the defendants put it in operation it had not been used for two seasons prior, and that they did not reset the valves, inspect the piston rings and packing for leakages or take any other steps to see that its mechanism was in working order. They complain that while they could get up steam pressure which should have been sufficient to furnish the requisite power to pull the separator, the engine would foam, lose power, and dissipate the steam pressure without delivering the necessary power at the pulley, thus necessitating frequent stops for the purpose of getting up more pressure, or running the separator at less than capacity, or weakening its efficiency as a threshing instrumentality by taking out concaves to make it pull easier.

The defendants testify in substance that Dahl told them that the engine was in A–1 condition and capable of going right out and doing good work; whereas Dahl denies that he made any such statements. He testifies that, on account of closing out his business and the difficulty of obtaining skilled mechanical labor, he could not do the necessary work to put the rig in condition; that he therefore desired to dispose of it, as it was early in the season, so that the purchasers could have ample time in which to put it in repair themselves. For these reasons, which he says he communicated to the defendants, he would and did sell the rig to them at such time and at such a price as to enable them to assume

responsibility for needed repairs, except to the extent of parts that he expressly agreed to supply.

It will be seen, from the foregoing statement, that there is a sharp conflict in the testimony relating to the warranty, and that the greater weight of the evidence, considered from the standpoint of the number of witnesses, is with the defendants, although it must be conceded that some of the circumstances tend to support the version of Dahl. The majority of the members of this court, upon a careful reading of the record, have come to the conclusion that the defendants have established by the greater weight of evidence the warranty claimed.

For breach of this warrenty, the defendants are entitled to recover their damages. The trial court has made a finding on this subject which appears to us reasonable and to be well supported by the evidence. The finding is that the defendant expended time in repairing the machinery and in attempting to operate it, that was reasoably worth $300; and that, if the defendants are entitled as a matter of law to recover on their counterclaim, they should recover that amount. Being of the opinion that this counterclaim is established, the judgment of the court below should be modified by allowing the defendants credit on the note for $300, leaving judgment to be rendered in the plaintiff's favor for $925 and interest as prescribed. With this modification, the judgment of the court below is affirmed. The appellants are entitled to their costs upon this appeal.

CHRISTIANSON, Ch. J., and BRONSON and ROBINSON, JJ., concur.

GRACE, J. (concurring in part and dissenting in part). The majority opinion has construed § 136 of the Constitution, and §§ 5238, 5240, and 5242, Comp. Laws 1913.

It, in effect, holds that such constitutional provision and all of said statutes are invalid.

We think, however, the part of the opinion which discusses § 136 of the Constitution, and said statutes, is largely obiter dictum, for it is clear from the evidence in the case, that plaintiff was not doing business in the state of North Dakota. It was a foreign corporation; its principal place of business was White Rock, South Dakota. The transaction in question—that is, the selling of this threshing outfit to the defend-

ants—was the only one had in this state, and it was only partially had in this state, a large share of the transaction having taken place in South Dakota.

It therefore is clear from the record, the plaintiff was not doing business in North Dakota, for the doing of business does not exist as a fact, by the doing of a single, isolated transaction, and in this case even that is at least partially lacking.

The conclusion is irresistible that the plaintiff's corporation was not transacting business in North Dakota, within the meaning of the statutes and the constitutional provision referred to, the plaintiff having carried on only a part of an isolated transaction within this state.

See, State use of Hart-Parr Co. v. Robb-Lawrence Co. 15 N. D. 55, 106 N. W. 406; Sucker State Drill Co. Wirtz, 17 N. D. 313, 18 L.R.A. (N.S.) 134, 115 N. W. 844.

As we view the matter, the opinion of the court, in this regard, is based upon an assumed state of facts. In other words, there are no facts in the record to which the reasoning therein can apply. In other words, the plaintiff was not doing business in the state of North Dakota. Hence, the question under consideration, discussed by the opinion of the court, does not inhere in this case.

The evidence clearly shows that the plaintiff warranted the threshing rig as a whole. Several witnesses for the defendants, by clear and convincing evidence, established this fact. It is also manifest that such guaranty related not only to the condition of the threshing rig, to its state of preservation, excepting as to the roof of the separator, and certain wheels for the engine, but it also included its capacity to do the work which threshing rigs of similar size and capacity are intended to do. It also conclusively appears from the evidence, that the threshing rig was absolutely worthless as such; that, in fact, it would do no work. The engine had no power; the separator had not only a rotted roof, but the remainder of the woodwork was largely decayed, especially in the mortises.

The judgment should be reversed, and a new trial granted.

The real issue to be determined upon a new trial should be the difference in value between the threshing rig, as represented and warranted, and its actual value in its condition before any repairs were made by the defendants.

The defendants should, also, be permitted to recover the amount of money which they expended in repairing of said machine, with the exception of the amount expended in repairing the roof of the separator. They should, also, be permitted to recover any damages sustained by them, which are the proximate result of plaintiff's misrepresentations, upon which they relied, if it further be shown, that plaintiff knew, at the time it sold said threshing rig, and made said representations and warranties, that the defendants were depending upon the use of said threshing rig to thresh their crops, and they were damaged by not being able to use it for that purpose.