# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

## BUTLER BROS. SHOE CO. v. UNITED STATES RUBBER CO.

### (Circuit Court of Appeals, Eighth Circuit. October 25, 1907.)

### No. 2,496.

1. EQUITY—PLEA OR ANSWER—OBJECTIONS—WAIVER.

Filing a replication and taking the proofs waives no substantial insufficiency of the facts set forth in a plea or answer to constitute a defense.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 664, 665.]

2. CORPORATIONS—FOREIGN CORPORATION—POWER OF STATE TO EXCLUDE OR CONDITION ITS BUSINESS NOT UNLIMITED—EXCEPTIONS.

The broad statement in Paul v. Virginia, 8 Wall. 168, 181, 19 L. Ed. 357, that a state may exclude a foreign corporation from business, or may condition its admission to do business within its borders by such terms as it may deem proper, has been qualified by the decisions of the Supreme Court, and the following exceptions to it are established:

(a) Every corporation empowered by the state of its creation to engage in interstate commerce may carry on that commerce in sound and recognized articles of commerce in every other state in the Union. Every prohibition, obstruction, or burden which the other states attempt to impose upon such business is unconstitutional and void.

(b) Every corporation of every state which is in the employ of the United States, has the right to exercise the necessary corporate powers and to transact the requisite business to discharge the duties of that employment in every other state in the Union, without let or hindrance from the latter.

(c) Every corporation of every state has the absolute right to institute, maintain, and defend in the federal courts, and to remove to these courts its suits in any other states in the cases and on the terms prescribed by the acts of Congress.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Commerce, §§ 7, 100; vol. 13, Courts, § 860; vol. 42, Removal of Causes, § 64.]

3. SAME—PROHIBITION WITHOUT DISCRIMINATION OF ALL BUSINESS, UNCONSTITUTIONAL AS TO INTERSTATE COMMERCE.

Where a corporation of one state is engaged in both interstate and intrastate commerce in any other state, the prohibition or the conditioning by the latter state of its exercise of its right to do business within its borders, without discriminating between that which constitutes interstate commerce and that which constitutes intrastate commerce, is unconstitutional and void, so far as it relates to the former.

156 F.—1

**4.** COMMERCE—INTERSTATE COMMERCE IN SOUND ARTICLES FREE FROM STATE REGULATION WHERE CONGRESS HAS NOT ACTED.

Interstate commerce in sound and well-recognized articles of commerce must be free, and any prohibition, obstruction, or burden of it by a state by any method is unconstitutional. Such commerce may not be regulated by a state at all. The exclusive power to regulate commerce among the states is vested in the Congress.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Commerce, § 7.]

**5.** SAME—FACTORAGE CONTRACTS BETWEEN CITIZENS OF DIFFERENT STATES ARE TRANSACTIONS OF—CONDITIONAL SALE AND FACTORAGE CONTRACT DISTINGUISHED.

A manufacturing corporation of New Jersey made annual contracts with a corporation of Colorado engaged in the wholesale business in that state, whereby the former agreed to send from its mill and warehouse in Eastern states to the latter in Colorado, upon its orders, rubber boots, shoes, and other rubber goods during the year for sale, and the latter agreed to receive, to store, and to sell them in its name as consignee, and to pay to the former for the goods which the latter sold certain agreed prices, which were so much less than its selling prices to its customers that it secured thereby the expenses of carrying on the business and a liberal commission. The contracts provided that the latter was appointed the agent of the former to sell the goods, that the latter should make advances when requested, that to the amount of its profits it guaranteed the sales, that the goods and their proceeds, until the latter paid the agreed prices, should be the property of the former, and that the latter assumed the risk of the receiving, storing, handling, and selling. The manufacturing corporation shipped the goods as agreed. It had no office, warehouse, or place of business in Colorado, and it neither incurred nor paid any of the expenses of receiving, storing, and selling the goods. The Colorado corporation ordered, received, stored, and sold the merchandise at its own expense, in consideration of the factorage secured to it by the contracts. *Held*:

(a) The agreements were factorage contracts, and they were not contracts for conditional sales.

(b) The making of the contracts and their performance by the New Jersey corporation were transactions of interstate commerce, which could not be lawfully prohibited or trammeled by the legislation or action of the state of Colorado.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1335; vol. 10, Commerce, § 29.]

**6.** CORPORATIONS—FOREIGN CORPORATION—CONSTITUTION AND STATUTES OF COLORADO REGARDING, IF LITERALLY CONSTRUED, UNCONSTITUTIONAL— THEY SHOULD BE INTERPRETED TO RELATE TO INTRASTATE COMMERCE AND THE COLORADO COURTS ONLY.

The Constitution and statutes of Colorado by their plain terms prohibit every foreign corporation from doing any business whatever, from exercising any corporate power, and from prosecuting or defending any suit in that state, unless it files certain writings, pays certain fees to certain officers and an annual license fee of 2 cents for each $1,000 of its capital stock, and they provide that a failure to pay the annual license fee shall constitute an absolute defense to all actions and proceedings brought by it in any court within the limits of the state, upon any transaction growing out of such business, until the license fee is paid. *Held*:

(a) This legislation, if literally interpreted, is unconstitutional and void, in so far as it prohibits or conditions the exercise by a corporation of another state of its right to carry on the business of interstate commerce in Colorado, and in so far as it prohibits or limits the exercise in that state by a foreign corporation of its right to institute and defend in the national courts suits for and against it arising out of that commerce.

(b) The true construction of this legislation is that it was intended to govern intrastate commerce and suits in the state courts in Colorado only,

and it is inapplicable to the business of interstate commerce in that state and to the right of a foreign corporation to institute, maintain, and defend suits in the federal courts.

(c) In the making and performance of the factorage contracts in suit the New Jersey corporation was not doing business in Colorado within the true meaning of the Constitution and statutes of that state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2519, 2524.]

7. COURTS—JURISDICTION OF NATIONAL COURTS—STATE LEGISLATION MAY NOT REVOKE OR IMPAIR.

While the national courts may enforce rights created and remedies granted by state statutes according to their terms, the jurisdiction and power of those courts was not granted by, and it may not be revoked, annulled, or impaired by, state legislation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 795.]

8. CORPORATIONS—FOREIGN CORPORATION—CONSIGNMENT OF GOODS TO FACTOR IN ANOTHER STATE NOT DOING BUSINESS THEREIN.

A foreign corporation, which has no warehouse, office, or place of business, and which neither incurs nor pays any of the expenses of receiving, handling, storing, or selling its goods, in a state to which it consigns them to its factor, who conducts all the business there, assumes and pays all the expenses of receiving, selling, handling, and storing the goods, is not doing business in the latter state within the true meaning of the statutes relative to the admission of foreign corporations.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2524.]

9. EQUITY—JURISDICTION—CONTROVERSY OVER EXTENDED ACCOUNT INVOKES.

An action at law is not as practicable, efficient, or adequate a remedy as a suit in equity, where the controversy involves an account which consists of many items, and a federal court has jurisdiction of it in equity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 151; vol. 1, Account, § 65.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

See 132 Fed. 398.

The United States Rubber Company, a corporation of New Jersey, was a large manufacturer of rubber goods, and its principal office was in New York. It had a factory in one of the Eastern states and a warehouse in Chicago, from which it shipped its merchandise to consignees and purchasers. The Butler Bros. Shoe Company, a corporation of Colorado, was a wholesale merchant engaged in the purchase and sale of rubber goods and other merchandise at Denver, in that state. In January, 1901, in January, 1902, and in January, 1903, it made similar factorage contracts with the rubber company for the shipment of the goods of the latter from its mill and warehouse to the shoe company at Denver upon its orders. By the contract of January, 1903, the rubber company appointed the shoe company its agent to sell, and agreed to consign to it at Denver, certain of its goods at agreed prices, and the shoe company agreed to receive the goods and assume the risk thereof; to pay freight and expenses of handling, carting, storing, selling, and delivering to its customers; to make advances to the rubber company in cash, or in notes, if requested; to guarantee the rubber company against all losses from sales to the extent of the shoe company's profits; to pay the rubber company at agreed prices, which were so much below the prices at which the shoe company sold to its customers that it thereby secured a liberal factorage or commission, and at specified times, for all consigned goods it sold to its customers; to purchase, at the option of the rubber company, at the termination

of the contract, all of the consigned goods then in its possession, except original and unbroken packages, at the prices that should then be ruling; to keep separate account books of the goods, of their receipt and sales; to keep a separate bank account under the name of the "Butler Bros. Shoe Company Consignee Account," in which the proceeds of the sales, including the consignee's profits or factorage should be deposited, and from which the consignee should check out the amounts due the consignor, the freight charges, and the consignee's profits or factorage; to bill the goods to the purchasers as consignee, and that all goods then on hand and those subsequently consigned should be the property of the consignor until they were sold to the consignee's purchasers; and that the books, accounts, bills receivable, and cash derived from the sales of the consigned property should be the property of the consignor. Pursuant to this contract the consignee ordered for sale to its customers, and the consignor shipped from its warehouse in Chicago, and from its mill, to Denver, Colo., goods of the value of many tens of thousands of dollars. After a few months the rubber company demanded an advance in cash from the factor. The latter failed to make this advance, but at the same time ordered the rubber company to send to it from $15,000 to $20,000 worth of rubber goods to fill orders it had previously taken from its customers therefor. In this state of the case, on October 22, 1903, the parties made a supplemental agreement to the effect that the consignor would waive its demand for the advance and would fill the factor's orders, and that the factor would pay the consignor for all the goods which it sold to its customers 60 days after the accounts for them fell due. The contracts provided that they should terminate at the end of one year from January, 1903. At the end of the year the factor made default in its payments, and in March, 1904, the rubber company exhibited its bill against the shoe company in the court below for an accounting, for a receiver of the property in the hands of the factor under the contract, for an injunction, for a recovery of its property remaining in the possession of the shoe company, and for a recovery of the moneys which the shoe company owed to it. The defendant answered, among other things, that the complainant had not qualified itself to do business in Colorado and had not paid the annual license tax prescribed by the statutes of Colorado for the doing of business in that state by a foreign corporation. To this portion of the answer the complainant excepted, its exception was overruled, and it then filed a general replication. Evidence was taken, there was a final hearing on the merits, and the court below rendered a decree that the complainant should receive $8,276.47 which remained in the bank in the "Butler Bros. Shoe Company Consignee Account," $29,647.09 which the receiver had realized from the goods, bills receivable, and accounts that accrued under the consignment and were taken from the shoe company by the receiver, and that the rubber company should recover of the shoe company $14,856.27 which the latter owed it, and the costs of the suit. From this decree the shoe company appealed.

J. E. Robinson (Charles J. Hughes, Jr., on the brief), for appellant.
Henry T. Rogers (Lucius M. Cuthbert, Daniel B. Ellis, and Pierpont Fuller, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Counsel for the appellant first assail the decree on the ground that, by filing the replication after its exception to the defense that the complainant had been doing business in the state of Colorado without a license was overruled, the complainant estopped itself from again questioning the sufficiency of that defense. This is not a case in which complainant waived its objections to the answer by failing

to file any exception to it (Story's Equity Pleading [10th Ed.] § 877; Slater v. Maxwell, 73 U. S. 268, 275, 18 L. Ed. 796; Hughes v. Blake, 6 Wheat. 463, 472, 5 L. Ed. 303; Farley v. Kittson, 120 U. S. 303, 314, 7 Sup. Ct. 534, 30 L. Ed. 684); and, even if it were, the facts alleged therein, if proved, would avail the defendant, under equity rule No. 33, only so far as in law and equity they ought to avail it. In the national courts the complainant in equity does not waive any substantial insufficiency of the facts set forth in a plea or answer to constitute a defense by filing a replication and taking the proofs. Pearce v. Rice, 142 U. S. 28, 42, 12 Sup. Ct. 130, 35 L. Ed. 925; Green v. Bogue, 158 U. S. 478, 500, 15 Sup. Ct. 975, 39 L. Ed. 1061; Soderberg v. Armstrong (C. C.) 116 Fed. 709.

The second and chief objection of counsel to the decree is that the contracts of factorage were illegal, and therefore void, because the complainant was a foreign corporation, and it carried on business in the state of Colorado without a license in violation of the statutes of that state. The contract of January, 1903, when reduced to its lowest terms, was that for one year the complainant would send on the orders of the defendant from its factory and warehouse in Eastern states shoes, boots, and rubber goods to the shoe company in Colorado, that the latter would make such advances to the complainant as it requested and would conduct the business and pay all the expenses of selling the goods for the factorage or commission, which consisted of the difference between the agreed prices between the parties to the contracts and the selling prices to the purchasers from the factor. The question has been exhaustively argued whether this was a contract for a conditional sale or a contract of agency. It did not evidence a conditional sale, because there was no obligation of the rubber company to transfer the title to the shoe company for an agreed price, and no obligation of the shoe company to pay an agreed price for the goods. There was no vendor or vendee named in the agreement. It was a contract of bailment for sale, not a contract of sale. In re Columbus Buggy Co., 143 Fed. 859, 74 C. C. A. 611. It was a contract of factorage. The supplemental contract of October, 1903, relieved the factor of making advances and bound it to guarantee payment for the goods it sold. It transformed the factor into a del credere factor. Were these contracts illegal and void?

The Constitution and the statutes of Colorado by their terms prohibit any foreign corporation from doing any business, exercising any corporate power, acquiring or holding any property, or prosecuting or defending any suit in the state, unless it has first filed with the Secretary of State a certificate of its incorporation, a written appointment of an agent in the state to accept service of process, and a written specification of a principal place of business in the state, has paid to the Secretary of State $30 for its first $50,000 and 50 cents for each additional $1,000 of its capital stock, a fee of $5, and numerous other fees for filing papers and issuing his certificate, and has paid to the Auditor of the State an annual license fee of 2 cents for each $1,000 of its capital stock. Const. Colo. art. 15, § 10; 1 Mills' Ann. St. §§ 499, 500; Sess. Laws Colo. 1901, p. 121, c. 52, § 10;

Sess. Laws 1902, p. 73, c. 3, § 64. The statutes of Colorado further provide that a failure to file this certificate of incorporation shall render each officer, agent, and stockholder of the foreign corporation liable for all contracts made in Colorado while it is in default (1 Mills' Ann. St. § 501), and that a failure to pay the annual license tax shall deprive the corporation absolutely of all rights and privileges to do business in the state, and shall constitute an absolute defense to all actions, suits, and proceedings in law or equity brought by the corporation in any court of competent jurisdiction within the limits of the state, until the tax is paid. Sess. Laws Colo. 1902, p. 74, c. 3, § 66. It is obvious that by the literal terms of this Constitution and these statutes no foreign corporation may lawfully exercise any corporate power, maintain any suit in any state or federal court, or do any business of any kind whatever in the state of Colorado, unless it first pays the license fees which that state has prescribed for permission to do business therein. Is this the true meaning of this statute? Is a contract by a manufacturer, or owner of articles of commerce to send them from one state to a factor in another to be sold by him for an agreed commission doing business in the latter state, within the true intent and meaning of such laws? If a California corporation ships a car load of fruit to a commission merchant in New York to be sold by him on agreed factorage, is the California corporation doing business in New York within the meaning of its statutes of this character? If it contracts to ship 1,000 car loads during a year on the same terms, is it violating the statutes of New York, unless it obtains a license to do business there? Counsel for the appellant insist that the appellee was doing business in Colorado under these contracts, and that they were void because it thus violated the laws of that state. They quote and rely upon the remarks of Mr. Justice Field, in Paul v. Virginia, 8 Wall. 168, 181, 19 L. Ed. 357, where he said:

"Now a grant of corporate existence is a grant of special privileges to the corporators, enabling them to act for certain designated purposes as a single individual, and exempting them (unless otherwise specially provided) from individual liability. The corporation, being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274: 'It must dwell in the place of its creation, and cannot migrate to another sovereignty.' The recognition of its existence even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states—a comity which is never extended where the existence of the corporation or the exercise of its powers is prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely, they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

From the statements in this quotation, counsel argued that the power and purpose of the state of Colorado were unrestricted, and that a foreign corporation cannot lawfully exercise any corporate power or do

any business whatever in the state of Colorado without a compliance with the requirements of its statutes.    But the contention fails to give due weight to the Constitution of the United States, to the opinions of the Supreme Court which have construed it, and to the actual decision in Paul v. Virginia.    In that case Paul had been convicted of delivering an insurance policy as agent of a foreign corporation in violation of the laws of the state of Virginia, which prescribed the terms on which such corporations might do business in the state.    He insisted that these laws were unconstitutional, because they deprived the foreign corporation of the privileges and immunities of the citizens of the several states, and because they constituted a regulation of commerce among the states.    The Supreme Court decided that a foreign corporation was not a citizen, within the true intent of the clause of the Constitution which declares that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states" (8 Wall. 177–180, 19 L. Ed. 357); that such a corporation was within the provision of the Constitution that Congress shall have power "to regulate commerce with foreign nations and among the several states," but that an issue of a policy of insurance was not a transaction of commerce.    "It is undoubtedly true, as stated by counsel," said the court, "that the power conferred upon Congress to regulate commerce includes as well commerce carried on by corporations as commerce carried on by individuals.    *  *  *    The language of the grant makes no reference to the instrumentalities by which commerce may be carried on.    It is general, and includes alike commerce by individuals, partnerships, associations, and corporations."    8 Wall. 182, 183, 19 L. Ed. 357.

In Pensacola Telegraph Company v. Western Union Telegraph Company, 96 U. S. 1, 8, 24 L. Ed. 708, the state of Florida had granted to the Pensacola Telegraph Company the exclusive right to establish and maintain lines of electric telegraph in certain counties of the state, and the Western Union Telegraph Company, a foreign corporation, sought to erect a line of telegraph therein.    Chief Justice Waite opened the opinion of the court in that case in these words:

"Congress has power 'to regulate commerce with foreign nations and among the several states' (Const. art. 1, § 8, par. 3) and 'to establish post offices and post roads' (Id. par. 7).    The Constitution of the United States and the laws made in pursuance thereof are the supreme law of the land.    A law of Congress made in pursuance of the Constitution suspends and overrides all state statutes with which it is in conflict.    Since the case of Gibbons v. Ogden, 9 Wheat. 1. 6 L. Ed. 23, it has never been doubted that commercial intercourse is the element of commerce which comes within the regulating power of Congress."

And he announced the unanimous opinion of the court that the grant of the exclusive right by the state of Florida to the Pensacola Company, and its attempt thereby to exclude the foreign corporation from certain portions of the state, were futile.    Of the case of Paul v. Virginia he said:

"We are aware that in Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357, this court decided that a state might exclude the corporation of another state from its jurisdiction, and that corporations are not within the clause of the Constitution which declares that 'the citizens of each state shall be entitled to all

privileges and immunities of citizens in the several states.' Article 4, § 2. That was not, however, the case of a corporation engaged in interstate commerce; and enough was said by the court to show that, if it had been, very different questions would have been presented."

In Cooper Manufacturing Company v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137, a corporation of the state of Ohio, in the face of the constitutional and statutory prohibition against doing business in Colorado, without filing its certificate of incorporation, appointing its agent for service, and specifying its principal place of business in that state, made a contract in the state of Colorado, with citizens of that state, to sell and deliver to them in Ohio a steam engine and other machinery for an agreed price. The purchasers refused to pay the price, and pleaded in answer to an action for it the invalidity of the contract, because the Ohio corporation had failed to comply with the qualifying statute, and the court dismissed the action. The Supreme Court reversed that judgment. It held that the Constitution and the statutes of Colorado could not be so literally construed as to prohibit a single act of business within the state, and added:

"So it is clear that the statute cannot be construed to impose upon a foreign corporation limitations of its right to make contracts in the state for carrying on commerce between the states, for that would make the act an invasion of the exclusive right of Congress to regulate commerce among the several states."

Mr. Justice Matthews and Mr. Justice Blatchford delivered a concurring opinion (pages 736, 737, of 113 U. S. page 742 of 5 Sup. Ct. [28 L. Ed. 1137]), in which they announced the rule upon this subject which has ever since prevailed in that court. They said:

"In the present case, the construction claimed for the Constitution of Colorado and the statute of that state passed in execution of it cannot be extended to prevent the plaintiff in error, a corporation of another state, from transacting any business in Colorado which of itself is commerce. The transaction in question was clearly of that character. It was the making of a contract in Colorado to manufacture certain machinery in Ohio, to be there delivered for transportation to the purchasers in Colorado. That was commerce; and to prohibit it, except upon conditions, is to regulate commerce between Colorado and Ohio, which is within the exclusive province of Congress. It is quite competent, no doubt, for Colorado to prohibit a foreign corporation from acquiring a domicile in that state, and to prohibit it from carrying on within that state its business of manufacturing machinery. But it cannot prohibit it from selling in Colorado, by contracts made there, its machinery manufactured elsewhere, for that would be to regulate commerce between the states."

In Pembina Mining Company v. Pennsylvania, 125 U. S. 181, 190, 8 Sup. Ct. 737, 741, 31 L. Ed. 650, the Supreme Court held that a state might exact a license fee for allowing a corporation, which was not engaged in interstate or foreign commerce, to maintain an office for its officers, stockholders, agents, and employés, but added that the power to exclude a foreign corporation from doing business within its limits, or to exact conditions for allowing it so to do, or for allowing it to hire offices therein did not exist, "where the corporation is in the employ of the federal government, or where its business is strictly commerce, interstate or foreign. The control of such com-

merce, being in the federal government, is not to be restricted by state authority."

In Fritts v. Palmer, 132 U. S. 282, 283, 10 Sup. Ct. 93, 33 L. Ed. 317, a foreign corporation which was not engaged in commerce purchased, took, and conveyed a title to real estate in Colorado without filing the certificate of incorporation and appointments required by the Constitution and statutes of that state, and the Supreme Court sustained the title upon the ground that the only penalty for the violation of the statutes was the liability of the officers and stockholders imposed in such cases.

In Lyng v. Michigan, 135 U. S. 161, 166, 10 Sup. Ct. 725, 726, 34 L. Ed. 150, the state of Michigan imposed an annual tax of $300 upon the business of selling brewed or malt liquors. Citizens of Wisconsin were engaged in manufacturing such liquors at Green Bay, in that state. They owned a warehouse at Iron River, in the state of Michigan, to which they shipped and in which they stored their liquor for sale in the original packages, and they employed Lyng as their agent to sell it there. Neither they nor their agent paid the tax; but he sold the liquor, and was arrested and convicted for a violation of the law. The Supreme Court reversed the conviction, citing Le Loup v. Mobile, 127 U. S. 640, 648, 8 Sup. Ct. 1380, 32 L. Ed. 311, and Bowman v. Chicago & Northwestern Railway, 125 U. S. 465, 8 Sup. Ct. 689, 31 L. Ed. 700, and said:

"We have repeatedly held that no state has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress."

In Norfolk & Western R. R. Co. v. Pennsylvania, 136 U. S. 114, 115, 118, 120, 10 Sup. Ct. 958, 960, 34 L. Ed. 394, the state of Pennsylvania had prohibited every foreign corporation, except insurance companies, which did not invest and use its capital in that commonwealth, from having any office or offices in that state, unless it paid an annual tax or license fee of one-fourth of a mill upon each dollar of its authorized capital to the auditor of the state. The Norfolk & Western Railroad Company was a foreign corporation. It had no railroad, and with trifling exceptions no capital, in the state of Pennsylvania; but its line of railroad in Virginia and West Virginia connected with other railroads, so that it formed a link in a through line of railroad over which, as a part of the business thereof, freight and passengers were carried into and out of the state. It had offices in Pennsylvania for the use of its officers, stockholders, agents, and employés. The Auditor assessed the annual tax upon it, and the state recovered a judgment therefor, which was affirmed by the Supreme Court of Pennsylvania. The Supreme Court of the United States reversed that judgment and said:

"It is well settled by numerous decisions of this court that a state cannot, under the guise of a license tax, exclude from its jurisdiction a foreign corporation engaged in interstate commerce, or impose any burden upon such commerce within its limits. * * * One of the terms of the contract by which

the plaintiff in error became a link in the through line of road referred to in the findings of fact provided that 'it shall be the duty of each initial road, member of the line, to solicit and procure traffic for the Great Southern Despatch [the name of said through line] at its own proper cost and expense.' Again, the plaintiff in error does not exercise, or seek to exercise, in Pennsylvania any privilege or franchise not immediately connected with interstate commerce and required for the purposes thereof. Before establishing its office in Philadelphia it obtained from the Secretary of the Commonwealth the certificate required by the act of the state Legislature of 1874 enabling it to maintain an office in the state. That office was maintained because of the necessities of the interstate business of the company, and for no other purpose. A tax upon it was, therefore, a tax upon one of the means or instrumentalities of the company's interstate commerce, and as such was in violation of the commercial clause of the Constitution of the United States. Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158; Philadelphia Steamship Co. v. Pennsylvania, 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. Ed. 1200, and cases cited; McCall v. California, 136 U. S. 104, 10 Sup. Ct. 881, 34 L. Ed. 392."

In Crutcher v. Kentucky, 141 U. S. 47, 57–59, 11 Sup. Ct. 851, 853, 854, 35 L. Ed. 649, the Legislature of that state had prohibited any agent of a foreign express company from doing business in the state unless the express company first filed with the Auditor of the State a statement of its articles of association and satisfactory evidence that it had $150,000 invested in some safe dividend paying stock and had paid to the Auditor of State fees to the amount of $20. Crutcher, the agent of a foreign corporation which was engaged in both interstate and intrastate commerce in Kentucky, was convicted and fined for a violation of this statute, and his conviction was affirmed by the Supreme Court of the state. But the Supreme Court of the United States reversed that conviction, and held that the state statute was unconstitutional and void, with declarations of the law which bear with compelling force upon the issue in this case. It said:

"If a partnership firm of individuals should undertake to carry on the business of interstate commerce between Kentucky and other states, it would not be within the province of the state Legislature to exact conditions on which they should carry on their business, nor to require them to take out a license therefor. To carry on interstate commerce is not a franchise or a privilege granted by the state. It is a right which every citizen of the United States is entitled to exercise under the Constitution and laws of the United States; and the accession of mere corporate facilities, as a matter of convenience in carrying on their business, cannot have the effect of depriving them of such right, unless Congress should see fit to interpose some contrary regulation on the subject. It has frequently been laid down by this court that the power of Congress over interstate commerce is as absolute as it is over foreign commerce. Would any one pretend that a state Legislature could prohibit a foreign corporation—an English or a French transportation company, for example—from coming into its borders and landing goods and passengers at its wharves, and soliciting goods and passengers for a return voyage, without first obtaining a license from some state officer, and filing a sworn statement as to the amount of its capital stock paid in? And why not? Evidently because the matter is not within the province of state legislation, but within that of national legislation. * * * And the same thing is exactly true with regard to interstate commerce as it is with regard to foreign commerce. * * * We do not think that the difficulty is at all obviated by the fact that the express company, as incidental to its main business (which is to carry goods between different states), does also some local business by carrying goods from one point to another within the state of Kentucky. This is, probably, quite as much for the accommodation of the people of that state as for the advantage of the company. But, whether so or not, it does not obviate the objection

that the regulations as to license and capital stock are imposed as conditions on the company's carrying on the business of interstate commerce, which was manifestly the principal object of its organization. These regulations are clearly a burden and a restriction upon that commerce. Whether intended as such, or not, they operate as such."

In Horn Silver Mining Company v. New York State, 143 U. S. 305, 315, 12 Sup. Ct. 403, 405, 36 L. Ed. 164, a corporation of Utah, which alleged in its answer that it was a manufacturing corporation carrying on manufactures in the state of New York, and which was found by the courts to have been engaged in business independently of interstate commerce, was held to be subject to a franchise tax levied upon all corporations, domestic and foreign, by a law of the state of New York. But Justice Field, who delivered the opinion of the court in that case and also in Paul v. Virginia, after quoting the unrestricted terms he used in the latter case, declared that two qualifications or exceptions to the power of a state to destroy or limit the right of a foreign corporation to do business within its limits had been established— one, that it could not exclude or condition the right of a foreign corporation to transact the business of interstate or foreign commerce within its borders; and another, that it could not exclude or condition the right of such a corporation to do business in the state when it was in the employ of the general government.

In Osborne v. Florida, 164 U. S. 650, 655, 17 Sup. Ct. 214, 41 L. Ed. 586, the Supreme Court of that state held that one of its statutes, which imposed a license fee upon all express companies doing business in the state, did not apply to or affect in any manner the business of a company which was interstate in its character, and that, so long as an express company confined its operations to interstate or foreign commerce, it was wholly exempt from this statute, and the Supreme Court sustained that decision, and in reviewing Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649, made these remarks which are pertinent to the Colorado Constitution and statutes here under consideration:

"The statute herein differs from the cases where statutes upon this subject have been held void, because in those cases the statutes prohibited the doing of any business in the state whatever, unless upon the payment of a fee or tax. It was said as to those cases that, as the law made the payment of the fee or the obtaining of the license a condition to the right to do any business whatever, whether interstate or purely local, it was on that account a regulation of interstate commerce, and therefore void. Here, however, under the construction as given by the state court, the company suffers no harm from the provisions of the statute. It can conduct its interstate business without paying the slightest heed to the act, because it does not apply to or in any degree affect the company in regard to that portion of its business which it has the right to conduct without regulation from the state. The company in this case need take out no license and pay no tax for doing interstate business, and the statute is therefore valid."

In Miller v. Ammon, 145 U. S. 421, 422, 12 Sup. Ct. 884, 36 L. Ed. 759, cited by the appellant, a citizen of Wisconsin purchased of the plaintiff in Chicago, on credit, and the plaintiff delivered to the purchaser in Chicago, wine, in violation of the ordinance of the city of Chicago, which prohibited such a sale in that city without a license, under a penalty of from $50 to $100. There was no interstate commerce

in the transaction, and the Supreme Court held that the liquor traffic was freighted with peril to the general welfare, that the contract of sale was unlawful, and that the plaintiff could not recover the purchase price.

In Missouri, Kansas & Texas Trust Company v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474, the Supreme Court of Minnesota had held that a statute of that state which declared that, whenever it satisfactorily appeared to a court that any evidence of debt was usurious, the court should declare it void, required the court to declare it void, without requiring the moneys borrowed upon it to be repaid, and the Supreme Court held that this construction must be given to the statute in a suit in equity in the federal court, based upon the statute. But that court added:

"Of course, these views are not applicable to cases arising out of interstate commerce, where the policy to be enforced is federal."

In Diamond Glue Co. v. U. S. Glue Company, 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 328, a foreign corporation, without qualifying to do business according to the law of the state of Wisconsin, made a contract to supervise the plans for a glue factory to be built upon a site in that state, to manage the manufacturing in the factory, to operate it for the defendant, and to do various other things. After the factory had been erected and put in operation, the defendant failed to comply with some of its terms, and the foreign corporation brought a suit upon it. The Supreme Court held that the contract was not for the carrying on of interstate commerce, but for the doing of a local business in the state of Wisconsin, and that it could not be enforced. This case is cited and much relied upon by counsel for the appellant; but it fails to govern the issue here in controversy, because the contract of the foreign corporation in that case was to carry on a local business in the state of Wisconsin.

In Chattanooga Building & Loan Ass'n v. Denson, 189 U. S. 408, 23 Sup. Ct. 630, 47 L. Ed. 870, cited by appellant, no question of interstate commerce arose, and the Supreme Court followed the opinion of the highest judicial tribunal of Alabama, to the effect that loaning money and taking a mortgage upon property in that state constituted doing business therein, and made the note and mortgage void where it had been taken by a foreign corporation without complying with the qualifying statute of the state.

In Pennsylvania Lumbermen's Mutual Fire Insurance Co. v. Meyer, 197 U. S. 407, 25 Sup. Ct. 483, 49 L. Ed. 810, and Board of Trade v. Hammond Elevator Co., 198 U. S. 424, 441, 25 Sup. Ct. 740, 49 L. Ed. 1111, no question of the regulation of interstate commerce arose, and the only issue was whether the foreign corporations had been doing business in the state to such an extent that the service of process upon one of their directors or agents therein was a lawful service upon the corporation.

In Caldwell v. North Carolina, 187 U. S. 622, 623, 23 Sup. Ct. 229, 47 L. Ed. 336, an ordinance of the city of Greensboro prohibited every person from engaging in the business of selling or delivering picture frames, pictures, photographs, or likenesses of the human face, unless

he first paid a license tax of $10 for each year. A foreign corporation, without paying this license tax, obtained contracts for pictures and frames through its solicitors in the city of Greensboro. It secured rooms in a hotel in the city, and shipped the pictures and frames from Chicago in large and separate packages to itself at Greensboro, where one of its agents took the packages from the railway freight station to the company's rooms, broke them open, put the pictures in their respective frames, and then delivered them to the purchasers. He was convicted of a violation of the ordinance, and the Supreme Court of the state sustained his conviction on the familiar ground that the ordinance made no discrimination between foreign and domestic corporations, or between interstate and intrastate commerce. The Supreme Court answered this contention in these words, quoted from an earlier opinion:

"It is strongly urged, as if it were a material point in the case, that no discrimination is made between domestic and foreign drummers—those of Tennessee and those of other states; that all are taxed alike. But that does not meet the difficulty. Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state. This was decided in the case of The State Freight Tax, 15 Wall. 232, 21 L. Ed. 146. The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce. A New Orleans merchant cannot be taxed there for ordering goods from London or New York, because in the one case it is an act of foreign and in the other of interstate commerce, both of which are subject to regulation by Congress alone."

It then quoted the opinion of the Supreme Court of North Carolina, that the transaction was not interstate commerce because the pictures and frames were shipped to the foreign corporation itself in Greensboro, were taken to its rooms in the hotel, there taken out of their original packages and put together, and then delivered by its agent, although it conceded that if the pictures had been placed in their frames in Chicago, and then shipped directly to the purchasers in original packages, that business might have been interstate commerce, and said:

"We are not persuaded by their reasoning. It seems to proceed upon two propositions: First, that the pictures in question were not completed before they were brought to Greensboro; and, second, that the articles were not shipped directly to the purchasers, but to an agent of the sender in Greensboro. But it certainly cannot be pretended that, if the pictures and the disconnected frames had been directly shipped to the purchasers, the license tax could have been imposed, either on the vendor out of the state, or on the purchaser within the state. If the pictures and the frames intended for them had been shipped directly to the purchasers, whether in the same or separate packages, such a transaction would, beyond question, be interstate commerce, beyond the reach of the taxing power of the state. It is too plain for argument that the supposed incomplete condition of articles of commerce, if shipped directly to the purchasers, cannot subject them to the license tax. * * * Nor does the fact that these articles were not shipped separately and directly to each individual purchaser, but were sent to an agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. * * * That the articles were sent as freight by rail, and were received at the railroad station by an agent who delivered them to the respective purchasers, in no wise changes the character of the commerce as interstate. Transactions between manufacturing companies in one state, through agents, with citizens of another, constitute a large part of interstate commerce; and for us to hold, with the court below, that

the same articles, if sent by rail directly to the purchasers, are free from state taxation, but, if sent to an agent to deliver, are taxable through a license tax upon the agent, would evidently take a considerable portion of such traffic out of the salutary protection of the interstate commerce clause of the Constitution."

In the light of the foregoing decisions there can be no doubt that no state in the Union retains the power to exclude a foreign corporation from, or to condition or burden its exercise of its constitutional right to carry on interstate commerce in recognized staple articles of commerce within the limits of the state.

There is yet another exception to the power of a state to condition the right of a foreign corporation to do business within its borders. It may not limit that right by requiring the corporation, as a condition of doing business, to waive or surrender its right to a determination of its controversies with citizens of other states in the national courts.

In Insurance Company v. Morse, 20 Wall. 445, 455, 456, 22 L. Ed. 365, the state of Wisconsin had enacted a law which by its terms conditioned the exercise by an insurance corporation of its right to do business in the state by requiring a contract on its part not to remove any suit against it to the federal court. The corporation made the agreement, but subsequently filed a petition and gave a bond for the removal of the action against it, brought by a citizen of Wisconsin, from the state court to the federal court. The court of the state denied the petition and gave judgment for the plaintiff, which was affirmed by the Supreme Court of the state. The Supreme Court of the United States again quoted and qualified the broad statement of the power of a state to exclude a foreign corporation, found in Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357. It said of that statement:

"The general language of the learned justice is to be expounded with reference to the judgment before him."

Speaking of the case of Paul v. Virginia, it declared that:

"It had no reference to the clause giving to citizens of other states the right of litigation in the United States courts, and certainly had no bearing upon the right of corporations to resort to those courts, or the power of the state to limit and restrict such resort."

Discussing the question upon its merits, the opinion proceeded in this way:

"The Constitution of the United States declares that the judicial power of the United States shall extend to all cases in law and equity arising under that Constitution, the laws of the United States, and to the treaties made or which shall be made under their authority, * * * and to controversies between a state and citizens of another state and between citizens of different states. The jurisdiction of the federal courts under this clause of the Constitution depends upon and is regulated by the laws of the United States. State legislation cannot confer jurisdiction upon the federal courts, nor can it limit or restrict the authority given by Congress in pursuance of the Constitution. This has been held many times. Railway Company v. Whitton, 13 Wall. 270, 20 L. Ed. 571; Payne v. Hook, 7 Wall. 427, 19 L. Ed. 260; The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397, and cases cited. It has also been held many times that a corporation is a citizen of the state by which it is created and in which its principal place of business is situate, so far as that it can sue and be sued in the federal courts. This court has repeatedly held that a corporation was a citizen of the state creating it, within the clause of the Constitution

extending the jurisdiction of the federal courts to citizens of different states."
20 Wall. 453. 22 L. Ed. 365.

The Supreme Court reversed the judgment below, and held (1) that the Constitution of the United States secured to corporations of other states the absolute right to remove their cases into the federal courts upon compliance with the national statutes, and (2) that the statute of Wisconsin was an obstruction to that right, was repugnant to the Constitution of the United States and the laws in pursuance thereof, and was illegal and void.

The question arose again in Barron v. Burnside, 121 U. S. 186, 200, 7 Sup. Ct. 931, 936, 30 L. Ed. 915, and the former decision was affirmed. The court said:

"As the Iowa statute makes the right to a permit dependent upon the surrender by the foreign corporation of a privilege secured to it by the Constitution and laws of the United States, the statute requiring the permit must be held to be void. * * * In all the cases in which this court has considered the subject of the granting by a state to a foreign corporation of its consent to the transaction of business in the state, it has uniformly asserted that no conditions can be imposed by the state which are repugnant to the Constitution and laws of the United States."

The review of the decisions of the Supreme Court relating to the power of a state to trammel or destroy the right of a corporation of another state to do business within its borders in which we have indulged may have been tedious; but it may be profitable, if it serve to correct the erroneous view that such a corporation has no such right, and that all its powers and privileges without the limits of the state of its creation are at the mercy of any state in which it attempts to do business. It is not now, and it never has been, the law that no corporation of one state has any absolute right of recognition in other states, or that other states may exclude all the corporations of any state from doing any business within them, or that they may condition their transaction of such business by such terms as they may think proper to impose.

The Constitution of the United States and the acts of Congress in pursuance thereof are the supreme law of the land. Under that Constitution and those laws a corporation of one state has at least three absolute rights which it may freely exercise in every other state in the Union, without let or hindrance from its legislation, or action:

(1) Every corporation, empowered to engage in interstate commerce by the state in which it is created, may carry on interstate commerce in every state in the Union, free of every prohibition and condition imposed by the latter. Pensacola Telegraph Company v. Western Union Telegraph Company, 96 U. S. 1, 8, 24 L. Ed. 708; Cooper Manufacturing Company v. Ferguson, 113 U. S. 727, 736, 737, 5 Sup. Ct. 739, 28 L. Ed. 1137; Pembina Silver Mining Company v. Pennsylvania, 125 U. S. 181, 190, 8 Sup. Ct. 737, 31 L. Ed. 650; Lyng v. Michigan, 135 U. S. 161, 166, 10 Sup. Ct. 725, 34 L. Ed. 150; Norfolk, etc., Ry. Co. v. Pennsylvania, 136 U. S. 114, 115, 118, 120, 10 Sup. Ct. 958, 34 L. Ed. 394; Crutcher v. Kentucky, 141 U. S. 47, 57, 59, 11 Sup. Ct. 851, 35 L. Ed. 649; Horn Silver Mining Company v. New York, 143 U. S. 305, 315, 12 Sup. Ct. 403, 36 L.

Ed. 164; Osborne v. Florida, 164 U. S. 650, 655, 656, 17 Sup. Ct. 214, 41 L. Ed. 586; Missouri, K. & T. Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474; Caldwell v. North Carolina, 187 U. S. 622, 623, 23 Sup. Ct. 229, 47 L. Ed. 336.

(2) Every corporation of any state in the employ of the United States has the right to exercise the necessary corporate powers and to transact the business requisite to discharge the duties of that employment in every other state in the Union without permission granted, or conditions imposed by the latter. Pembina Mining Co. v. Pennsylvania, 125 U. S. 181, 186, 8 Sup. Ct. 737, 31 L. Ed. 650; Horn Silver Mining Co. v. New York, 143 U. S. 305, 315, 12 Sup. Ct. 403, 36 L. Ed. 164.

(3) Every corporation of each state has the absolute right to institute and maintain in the federal courts, and to remove to those courts for trial and decision, its suits in every other state, in the cases and on the terms prescribed by the acts of Congress. Insurance Company v. Morse, 87 U. S. 445, 453, 456, 22 L. Ed. 365; Barron v. Burnside, 121 U. S. 186, 200, 7 Sup. Ct. 931, 30 L. Ed. 915.

Every law of a state which attempts to destroy these rights or to burden their exercise is violative of the Constitution of the United States and void. The Constitution and statutes of Colorado prohibit every foreign corporation from doing business and from exercising any corporate power in that state until it pays the fees and the annual license tax and complies with the other requirements of its statutes. The result is that in so far as this Constitution and these statutes forbid or obstruct the exercise by a foreign corporation of it right to use the necessary corporate powers to carry on interstate commerce and to maintain and defend its suits in the federal courts, they are repugnant to the Constitution and laws of the nation and ineffective.

We come, then, to the question: Were the contracts in suit transactions of interstate commerce? The contract of January, 1903, was made in New York, and that of October, 1903, in Colorado; but the place of their execution is immaterial here, because the right of the rubber company was as absolute to make and to perform a contract of interstate commerce in Colorado as in New Jersey.

The contention that the rubber goods ceased to be articles of interstate commerce, and became a part of the mass of the property in the state, upon their delivery to the consignee, is likewise immaterial. The soundness of this contention is not conceded. But, if it were, neither that concession nor the numerous authorities upon the taxation of property in the state would be either decisive or persuasive here, for the question is, not whether or not the goods were taxable within the state, but whether or not the state could lawfully prohibit their importation and annul all contracts therefor. If a part of the goods or of the business of the rubber company has been or is within the state of Colorado, there are adequate methods of taxing it, without restraining or prohibiting its interstate commerce, and that fact furnishes no support for such a prohibition. Le Loup v. Port of Mobile, 127 U. S. 640, 647, 8 Sup. Ct. 1380, 32 L. Ed. 311; Crutcher v. Kentucky, 141 U. S. 47, 59, 11 Sup. Ct. 851, 35 L. Ed. 649.

Nor is the fact that these contracts did not evidence sales of the goods determinative of this question. A sale is not the test of interstate commerce. All sales of sound articles of commerce, which necessitate the transportation of the goods sold from one state to another, are interstate commerce; but all interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce. "Since the case of Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23," said Chief Justice Waite in Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 8, 24 L. Ed. 708, "it has never been doubted that commercial intercourse is an element of commerce which comes within the regulating power of Congress." The contracts before us constituted and caused commercial intercourse between citizens of different states. Their chief purpose and their principal effect were the importation of sound articles of commerce into the state of Colorado from other states, and they necessarily constituted transactions of interstate commerce. Caldwell v. North Carolina, 187 U. S. 622, 629, 23 Sup. Ct. 229, 47 L. Ed. 336; Wagner v. Meakin, 92 Fed. 76, 33 C. C. A. 577, 581, 584; Allen v. Tyson-Jones Buggy Co., 91 Tex. 22, 40 S. W. 393, 714; Chattanooga R. & C. R. Co. v. Evans, 66 Fed. 809, 814, 14 C. C. A. 116; Gunn v. White Sewing Machine Co., 57 Ark. 24, 20 S. W. 591, 18 L. R. A. 206, 38 Am. St. Rep. 223; Keating Implement & Machine Co. v. Favorite Carriage Co., 12 Tex. Civ. App. 666, 35 S. W. 417. The decision of the Supreme Court of Kentucky to the contrary in Commonwealth v. Parlin & Orendorff Co., 118 Ky. 168, 80 S. W. 791, has been thoughtfully read, but it does not commend itself to our judgment.

As the contracts were transactions of interstate commerce, any prohibition or obstruction to the making of them, or to the enforcement of them in the national courts, by the legislation or action of the state of Colorado, was beyond the power of the state and futile. Where the Congress has passed no law regulating interstate commerce in well-recognized articles of commerce, that fact is conclusive evidence that it intends such commerce to be free, and any law of a state which prohibits or restrains it at all is unconstitutional and void. Caldwell v. North Carolina, 187 U. S. 622, 629, 23 Sup. Ct. 229, 47 L. Ed. 336; Brown v. Houston, 114 U. S. 622, 631, 5 Sup. Ct. 1091, 29 L. Ed. 257; Bowerman v. Rogers, 125 U. S. 585, 587, 8 Sup. Ct. 986, 31 L. Ed. 815; Walling v. Michigan, 116 U. S. 455, 456, 6 Sup. Ct. 454, 29 L. Ed. 691; Welton v. The State of Missouri, 91 U. S. 275, 282, 23 L. Ed. 347; State Freight Tax, 15 Wall. 232, 21 L. Ed. 146; Brennan v. Titusville, 153 U. S. 289, 302, 14 Sup. Ct. 829, 38 L. Ed. 719; Robbins v. Shelby County Taxing District, 120 U. S. 489, 493, 7 Sup. Ct. 592, 30 L. Ed. 694; Le Loup v. Mobile, 127 U. S. 640, 647, 648, 8 Sup. Ct. 1380, 32 L. Ed. 311; Lyng v. Michigan, 135 U. S. 161, 166, 10 Sup. Ct. 725, 34 L. Ed. 150; Leisy v. Hardin, 135 U. S. 100, 119, 10 Sup. Ct. 681, 34 L. Ed. 128.

The declaration of the Colorado statute that the fact that a foreign corporation has been doing business in the state without its license shall constitute an absolute defense to any action arising out of such business is ineffectual to restrain or modify the power or duty of the national courts to hear and decide the controversies of such corporations arising from its transactions of interstate commerce according to the very right of the matter. A Circuit Court of the United States may administer a new right or remedy granted by the statute of a state to its citizens according to the terms of that statute. Missouri, K. & T. Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474; National Surety Co. v. State Bank, 120 Fed. 593, 603, 56 C. C. A. 657, 61 L. R. A. 394; Barber Asphalt Paving Co. v. Morris, 132 Fed. 945, 949, 66 C. C. A. 55, 67 L. R. A. 761. But the power of the Circuit Courts of the United States to administer rights and remedies in equity was vested in them as part of the judicial power of the nation under the Constitution of the United States and the judiciary act of 1789, and as it was not granted by, it may not be revoked, impaired, or destroyed by, the legislation or act of any state. Payne v. Hook, 7 Wall. 425, 430, 19 L. Ed. 260; Green's Adm'x v. Creighton, 23 How. 90, 105, 16 L. Ed. 419; Insurance Co. v. Morse, 87 U. S. 445, 458, 22 L. Ed. 365; Suydam v. Broadnax, 14 Pet. 66, 74, 10 L. Ed. 357; Union Bank of Tennessee v. Jolly's Adm'rs, 18 How. 503, 507, 15 L. Ed. 472; Hyde v. Stone, 20 How. 170, 175, 15 L. Ed. 874; Blodgett v. Lanyon Zinc Co., 120 Fed. 893, 897, 898, 58 C. C. A. 79; National Surety Co. v. State Bank, 120 Fed. 593, 603, 56 C. C. A. 657, 61 L. R. A. 394; Hervey v. Illinois Midland Co. (C. C.) 28 Fed. 169, 175; Farmers' Loan & Trust Co. v. Chicago & N. P. R. Co. (C. C.) 68 Fed. 412, 417; Sullivan v. Beck (C. C.) 79 Fed. 200, 202; Jarvis-Conklin Mtg. Trust Co. v. Willhoit (C. C.) 84 Fed. 514, 517; Eastern B. & L. Ass'n v. Bedford (C. C.) 88 Fed. 7, 12. The unavoidable result is that, if the Constitution and statutes of Colorado are to be interpreted to mean, as they clearly read, to prohibit every foreign corporation from exercising any corporate power whatever, or doing any business whatever, in the state, unless they pay the fees and the annual license tax which this legislation requires as a condition thereof, they are unconstitutional and void, so far as they apply to interstate commerce conducted by foreign corporations or suits for and against them in the national courts.

There is, however, another view of this case which is both reasonable and persuasive. The law upon the subject which has been considered was the same when the Colorado Constitution was adopted and when her statutes were enacted that it is to-day, and the legal presumption, in the absence of persuasive evidence of another purpose, is that the people and the Legislature of that state intended in the adoption of this Constitution and the enactment of these laws to obey the supreme law of the land, that they intended to prohibit the doing of intrastate business only, and the exercise by foreign corporations of corporate power unauthorized by the Constitution and laws of the United States, and that only, without a license from their state. Hence this Constitution and these statutes should be read and interpreted, if possible, in the light of this presumption, so that they will not conflict

with the Constitution and the laws of the United States. The Supreme Court seems to have been inclined to a liberal interpretation of this nature, for in Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317, the foreign corporation had clearly violated the plain terms of the Colorado statute. It had exercised corporate power in that state. It had acquired, held, and conveyed real estate in violation of the legislation of that state, and yet the court sustained the title. The Supreme Court of Colorado construed this legislation in this rational spirit when it held that a single act of business did not come within the purview of some of these statutes (Kindel v. Lithographing Co., 19 Colo. 310, 35 Pac. 538, 24 L. R. A. 311; Roseberry v. Valley Building & Loan Ass'n, 83 Pac. 637), although by their express terms they prohibited a single exercise of corporate power and a single act of business as imperatively as they forbade many. An interpretation of this legislation so that it may conform to the national law, and so that acts done in undoubted violation of its plain terms may be held to be without its true meaning and purpose, is rational and just, and it is supported by high authority. Harris v. Runnels, 12 How. 79, 84, 13 L. Ed. 901; National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Coit v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819; Oakland Sugar Mill Co. v. Fred W. Wolf Co., 118 Fed. 239, 243, 55 C. C. A. 93; Watrous & Snouffer v. Blair, 32 Iowa, 58; Pangborn v. Westlake, 36 Iowa, 546, 548; Chattanooga, R. & C. R. Co. v. Evans, 66 Fed. 809, 815, 816, 14 C. C. A. 116, 121, 122.

Let us now turn to the contracts, observe what the rubber company agreed to do and what it actually did under them, and determine, if possible, whether or not in making or in performing these agreements it was guilty of doing any business within the meaning of the Constitution and statutes of Colorado. It agreed to ship the goods from its warehouse, or its mill, upon the orders of the appellee, to that company in Denver; and it did so. It contracted to do, and it did, nothing more. It never had any office or place of business in Colorado. It never received, stored, handled, or sold any goods, or collected any money for the sales of any goods, in that state under this contract. It never incurred, assumed, or paid any expenses of doing all these things, or of conducting any of the business. The shoe company had and maintained a place of business in Colorado, it rented or owned the place in which the business in Colorado was done, and it agreed to bear all the expenses and losses of receiving, storing, and selling the goods; and it did so. The purchasers of the goods were purchasers from it, solicited and secured by it. They were its customers, and liable to it for the purchase price of the goods. The goods were billed to them in the name of the shoe company as consignee. The profits of the business and the work of the business, the labor of receiving, storing, and selling the goods, were the shoe company's. The profits constituted its factorage, its compensation, for carrying on the business. There is no question here between the state and the shoe company, or between the shoe company and the purchasers of the goods, or between the rubber company and the purchasers of the goods. The question here is between the consignor and the factor, and it is whether the consignor, which did not agree to do, and did not in fact, do the business of receiving, storing, and

selling these goods, or the factor who did contract to do, and did actually do, the business of receiving, storing, and selling these goods, in Colorado, and who received the factorage therefor, was doing that business. In a simple transaction the true answer seems clear. A farmer sends to a commission merchant in a city a dozen barrels of apples for him to sell. The factor puts them in his store, sells them, receives the proceeds, and remits them, less his factorage. The farmer from time to time sends 1,000 barrels during the season, and they are sold and the proceeds are remitted in the same way. The farmer is not carrying on the business of selling apples in the city, but the factor is. The transaction in hand is larger, but in every element which conditions its legal character and effect it is not different. The transaction between the parties to this suit was interstate commerce. The rubber company did not agree to do, and did not actually do, any of the business of receiving, storing, and selling the goods in Colorado. The shoe company did agree to do, and did do, that business. These facts have driven our minds with compelling force to the conclusion that, within the true intent and meaning of the Constitution and statutes of Colorado, the rubber company was not doing business in that state, and the contracts between these litigants are valid and enforceable.

Many authorities have been examined which relate in some degree to the question which has now been decided. They are numerous, various, and conflicting, and any attempt to reconcile them must fail. The reasons for the conclusion reached have been stated, and some of the authorities examined are here cited for reference: Nutter v. Wheeler, 2 Lowell, 346, 18 Fed. Cas. 497; In re Hovey's Estate, 198 Pa. 385, 48 Atl. 311, 315; Chattanooga, R. & C. R. Co. v. Evans, 66 Fed. 809, 815, 816, 14 C. C. A. 116, 121, 122; Allen et al. v. Tyson-Jones Buggy Co., 91 Tex. 22, 40 S. W. 393, 714; Keating Implement & Machine Co. v. Favorite Carriage Co., 12 Tex. Civ. App. 666, 35 S. W. 417; Gunn v. White Sewing Machine Co., 57 Ark. 24, 20 S. W. 591, 18 L. R. A. 206, 38 Am. St. Rep. 223; Bertha Zinc & Mineral Co. v. Clute, 27 N. Y. Supp. 342, 7 Misc. Rep. 123; U. S. v. American Bell Teleph. Co. (C. C.) 29 Fed. 17, 40; Wolff Dryer v. Bigler, 192 Pa. 466, 43 Atl. 1092; Ammons v. Brunswick Co., 141 Fed. 570, 575, 72 C. C. A. 614; Blodgett v. Lanyon Zinc Co., 120 Fed. 893, 58 C. C. A. 79; Iowa Lillooet Gold Mining Co. v. U. S. F. & G. Co. (C. C.) 146 Fed. 437; Osborne & Co. v. Josselyn, 92 Minn. 267, 99 N. W. 890; Davis & Rankin Building, etc., Co. v. Caigle (Tenn. Ch. App.) 53 S. W. 240; Southern Cotton Oil Co. v. Wemple (C. C.) 44 Fed. 24; People ex rel. v. Wemple, 131 N. Y. 64, 69, 29 N. E. 1002, 27 Am. St. Rep. 542; Chicago M. & L. Co. v. Sims, 101 Mo. App. 569, 74 S. W. 128; Fertilizer Co. v. Kelly, 10 Pa. Super. Ct. 565; Elliott v. Parlin & Orendorff Co., 71 Kan. 665, 81 Pac. 500, 502; John Deere Plow Co. v. Wyland, 69 Kan. 255, 76 Pac. 863; D. M. Osborne & Co. v. Shilling (Kan.) 88 Pac. 258; Pennsylvania L. M. Fire Ins. Co. v. Meyer, 197 U. S. 407, 415, 25 Sup. Ct. 483, 49 L. Ed. 810; Commonwealth v. Parlin & Orendorff Co., 118 Ky. 168, 80 S. W. 791; New Haven Pulp & Board Co. v. Downingtown Mfg. Co. (C. C.) 130 Fed. 605; Wilson Moline Buggy Co. v. Priebe (Mo. App.) 100 S. W. 558; Pittsburgh Const. Co. v. West Side Belt R. Co. (C. C.) 151 Fed. 125; Brewing

Co. v. Peimeisl, 85 Minn. 121, 88 N. W. 441; Nursery Co. v. Aughenbaugh, 93 Minn. 201, 100 N. W. 1101; Thomas Mfg. Co. v. Knapp (Minn.) 112 N. W. 989.

Finally, counsel for the shoe company argue that the decree should be reversed and the bill dismissed because the complainant had an adequate remedy at law. The adequate remedy at law which will deprive a federal court of jurisdiction in equity must be as certain, practical, prompt, efficient, and complete as the remedy in equity. Boyce's Executors v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Castle Creek Water Co. v. City of Aspen, 146 Fed. 8, 14, 76 C. C. A. 516. The relief which the complainant sought was the immediate possession and ultimate recovery of the goods in the hands of the defendant which subsequently realized $39,647.09, the recovery from the bank of the $8,276.47 which it owed upon the "Butler Bros. Shoe Company Consignee Account," and the recovery from the shoe company of the $14,856.27 which it owed on account of the goods it had sold. The shoe company denied by its answer that the complainant was entitled to any of this relief. To obtain such relief at law an action of replevin and of assumpsit against the defendant, and an action against the bank, would have been necessary, and the remedy by two or three actions at law might not have been as prompt and efficient as a single suit in equity. In order to determine the issues presented by the pleadings it was necessary to take and state an account of many items, to the end that the quantities and selling prices of the goods which the defendant had sold and the amounts due to the complainant therefor might be determined. No action at law furnishes as efficient, practical, or adequate a remedy for the decision of such a controversy as a suit in a court of equity, which, with its deliberate methods, its power to select men trained in the science of accounting to take the evidence and state the result, its authority to consider and modify their reports after exceptions and hearings, is alone really competent to justly determine such an issue. Gunn v. Brinkley Car Works & Mfg. Co., 66 Fed. 382, 384, 13 C. C. A. 529, 531; Hayden v. Thompson, 71 Fed. 60, 64, 17 C. C. A. 592, 595; Fechteler v. Palm Bros. & Co., 133 Fed. 462, 465, 66 C. C. A. 336; M'Mullen Lumber Co. v. Strother, 136 Fed. 295, 303, 304, 69 C. C. A. 433.

The complainant had no adequate remedy at law, and the decree below must be affirmed.

It is so ordered.